**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1250
_____

UNITED STATES OF AMERICA

v.

WAYNE A.G. JAMES,
                              Appellant
_____

Appeal from the District Court
for the Virgin Islands
(No. 3:15-cr-00042-001)
District Judge: Hon. Curtis V. Gomez
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 12, 2019
_____

Before: SMITH, <u>Chief Judge</u>, McKEE, and SHWARTZ,
<u>Circuit Judges</u>.

(Filed: April 3, 2020)

————————————

OPINION

————————————

Brian A. Benczkowski
Annalou Tirol
Amanda R. Vaughn
United States Department of Justice
Criminal Division, Public Integrity Section
1400 New York Avenue, N.W.
Washington, DC 20005

Gretchen C.F. Shappert
Delia L. Smith
Office of the United States Attorney
5500 Veterans Drive
United States Courthouse, Suite 260
St. Thomas, VI 00802

    Counsel for Appellee

Gabriel J. Villegas
Federal Public Defender District Virgin Islands
Office of the Public Defender
1336 Beltjen Road
Suite 202, Tunick Building
St. Thomas, VI 00802

Michael A. Rogers
Office of Federal Public Defender
4094 Diamond Ruby
Suite 5

2

Christiansted, VI 00820

Counsel for Appellant

SHWARTZ, Circuit Judge.

Defendant Wayne A. G. James appeals his conviction for wire fraud and embezzlement. James challenges: (1) the introduction of evidence outside the statute of limitations; (2) the Government's attempts to introduce evidence about James's eviction lawsuit; (3) the use of a demonstrative aid; and (4) the substitution of an excused juror with an alternate after the jury had been polled. Discerning no error, we will affirm.

I

A

During the 2009 to 2010 term, James served as a senator in the Virgin Islands Legislature. The Legislature maintained a fund that James and other senators could use to pay for Legislature-related expenses, such as the costs of running their offices, supplies, or for legislative initiatives. Senators sometimes received checks from the fund for such items. James used a large portion of the checks issued to him for his personal expenses.

James obtained these checks by presenting invoices purportedly associated with work on a historical project. Before becoming a senator, James took an interest in the 1878 Fireburn, a revolt on St. Croix. The Danish National Archives ("the Archives") possesses historical documents about the

event. In February 2008, James inquired about retrieving documents from the Archives and received a cost estimate. For a fee, which had to be pre-paid by wire transfer, the Archives would gather and provide copies of documents to individuals outside of Denmark. James hoped to use the records to eventually produce a movie.

Over a year later, after James's election to the Legislature, he requested funds for his Fireburn research project from the Legislature. From April 2009 through mid-October 2010, James obtained several checks by submitting false invoices for purported translation and research work for the Fireburn project. Only a fraction of the funds James received were used to pay for the Danish records and translations. James used most of the funds for his personal benefit, including for his re-election campaign.

Law enforcement investigated this conduct and, on October 1, 2015, a grand jury returned an indictment charging James with two counts of wire fraud in violation of 18 U.S.C. § 1343 and one count of federal program embezzlement in violation of 18 U.S.C. § 666(a)(1)(A).

B

At trial, three evidentiary issues arose that are relevant to this appeal. First, the District Court permitted the Government to introduce evidence of acts outside the limitations period, 18 U.S.C. § 3282(a).

Second, James moved to exclude evidence that he paid a court-ordered $18,000 bond in an eviction dispute with his landlord on the same day as he cashed one of the checks from

4

the Legislature. The District Court did not rule on this motion before trial, but it instructed the Government not to discuss the eviction case in its opening. Thereafter, the Government called two witnesses to testify about the eviction-related payment, Gerald Groner and Indira Chumney. Groner was an attorney who had participated in the eviction litigation. James objected to Groner's testimony before any questioning took place. The objection was sustained and Groner was excused. Chumney was the branch operations manager for First Bank and was questioned about a bank statement and deposit slip reflecting James's deposit of $18,000. James objected before she testified about any other topic. The objection was sustained and the witness was excused. Although neither witness testified about the eviction case, James argued that the Government's attempts to introduce evidence about it constituted prosecutorial misconduct and moved for a mistrial. The Court denied the motion.

Third, the District Court permitted the use of a chart as a demonstrative aid to accompany the case agent's testimony. The chart captured information from admitted exhibits, including dates of check requests, amounts requested and paid, and dates checks were cashed. James objected to the Government's effort to offer the chart into evidence under Federal Rule of Evidence 1006. The Court took the objection under advisement. The Court thereafter asked if James objected to use of the chart as a demonstrative aid and James replied "no objection." App. 676. The Court thereafter instructed the jury that it should consider the chart as a guide for testimony, not as substantive evidence. The Government used the chart during the case agent's testimony to discuss the transactions, but it was not admitted into evidence.

5

C

When the jury determined they had completed their deliberations, the foreperson announced a guilty verdict. Before the District Court recorded the verdict, it polled the jury and perceived a problem with Juror 8. After discussion with counsel, the Court questioned Juror 8. The questioning revealed Juror 8's limited ability to speak and understand English. The Court also noted concerns about Juror 8's candor and memory, and then it excused Juror 8. James consented to the Court's decision to excuse Juror 8, but he objected to replacing the excused juror with an alternate. Despite James's objection, the Court replaced the excused juror with an alternate. The Court then instructed the jury: (1) to "restart" its deliberations "as though you are starting from scratch," App. 913-14; (2) "there is no rush to reach a verdict;" App. 914; (3) the verdict "must be considered and deliberate;" id.; and (4) the new juror "should feel as though he is beginning anew, not . . . interposing or becoming someone who is interrupting an ongoing process," id. The reconstituted jury retired to deliberate anew and eventually announced a unanimous guilty verdict.

James appeals.

II[1]

James challenges: (1) the introduction of evidence outside the statute of limitations; (2) the Government's attempts to introduce evidence of the payment in the eviction

---

[1] The District Court had jurisdiction under 48 U.S.C. § 1612. We have jurisdiction under 28 U.S.C. § 1291.

lawsuit; (3) the use of the chart during the case agent's testimony; and (4) the substitution of an excused juror with an alternate after jury polling.  We address each claim in turn.

A[2]

James argues that the District Court erred in permitting the Government to introduce evidence of acts falling outside the statute of limitations.  18 U.S.C. § 3282(a).  "The general statute of limitations is five years after the offense is committed."  United States v. Schneider, 801 F.3d 186, 195 (3d Cir. 2015) (citing 18 U.S.C. § 3282(a)).  Because the Indictment was filed in October 2015, James argues that evidence of conduct that occurred before October 2010 is inadmissible.

To prove wire fraud, the Government must show that the defendant "willful[ly] participat[ed] in a scheme or artifice to defraud," with intent to defraud, and used a wire to further that scheme.  United States v. Andrews, 681 F.3d 509, 518 (3d Cir. 2012).  Wire fraud is not a continuing offense, United States v. Siddons, 660 F.3d 699, 705 (3d Cir. 2011), but each wire may further a single, ongoing scheme to defraud, see Andrews, 681 F.3d at 518.  Thus, "mailings [and wirings] that fall outside the statute of limitations can be considered as evidence to prove [a] fraud that [occurred] within the statute of

---

[2] We review the District Court's decision to allow or exclude evidence for abuse of discretion.  United States v. Starnes, 583 F.3d 196, 213-14 (3d Cir. 2009).  "We will not disturb a trial court's exercise of discretion unless no reasonable person would adopt the district court's view."  Id. at 214 (alterations and internal quotation marks omitted).

7

limitations." United States v. Pharis, 298 F.3d 228, 234 n.3 (3d Cir. 2002) (en banc), as amended (Sept. 30, 2002); see United States v. Morelli, 169 F.3d 798, 806 n.9 (3d Cir. 1999) ("[T]he wire fraud and mail fraud statutes differ only in form, not in substance[.]").

Because the jury may consider evidence outside the limitations period that proves the existence of an artifice to defraud, Pharis, 298 F.3d at 234, the District Court properly permitted evidence predating October 2010. Such evidence, including James's submission of false invoices to the Legislature to obtain funds for his own use, proved "the existence of [his] overarching scheme to defraud, [which] is an essential element of the wire fraud offenses." App. 101-02. More specifically, the Government introduced evidence of fake invoices and check requests from 2009 and early 2010, together with the fraudulent, non-time-barred October 2010 invoices, to show that James had an ongoing scheme to use the Fireburn research as cover to obtain Virgin Island funds for his personal use. The fact that James's scheme began before October 2010 does not make evidence about his scheme from that period inadmissible, as it is relevant to prove an element of a non-time-barred crime: the existence of a scheme to defraud. Pharis, 298 F.3d at 234; see also Fitzgerald v. Henderson, 251 F.3d 345, 365 (2d Cir. 2001) ("A statute of limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period."). Thus, the Court did not abuse its discretion in admitting evidence of activities that occurred outside the statute of limitations.[3]

---

[3] Because evidence of James's activity that occurred outside the statute of limitations was offered to prove the charged

B[4]

James also argues that the District Court erred in refusing to grant a mistrial motion based on alleged prosecutorial misconduct. According to James, the Government attempted to introduce evidence of an eviction matter that the Court had precluded.

A prosecutor's comments constitute reversible error only if they result in the denial of due process. See United States v. Repak, 852 F.3d 230, 259 (3d Cir. 2017); United States v. Lee, 612 F.3d 170, 194 (3d Cir. 2010). "The Government may run afoul of the defendant's due process right to a fair trial by systematically injecting inadmissible . . . evidence at trial, thereby permeat[ing] the proceedings with prejudice." United States v. Welshans, 892 F.3d 566, 574 (3d Cir. 2018) (internal citations and quotation marks omitted). We do not "lightly overturn[]" a conviction based on prosecutorial misconduct. United States v. Young, 470 U.S. 1, 11 (1985). The "conduct must be viewed in context," and

---

scheme to defraud, it was not Federal Rule of Evidence 404(b) "other acts" evidence, so any objection on that basis is inapt. United States v. Green, 617 F.3d 233, 248 (3d Cir. 2010) ("This gives effect to Rule 404(b)'s applicability only to evidence of other crimes, wrongs, or acts. If uncharged misconduct directly proves the charged offense, it is not evidence of some 'other' crime." (internal quotation marks and citation omitted)).

[4] We review the District Court's ruling on a mistrial motion for abuse of discretion. See United States v. Brennan, 326 F.3d 176, 182 (3d Cir. 2003).

"only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial." Id.

The Government's efforts to introduce evidence from an eviction lawsuit against James did not deprive him of due process. The District Court repeatedly expressed to the Government not to introduce evidence about the eviction case.[5] The Government nevertheless called two witnesses to testify to facts related to that case to show James's "motive to steal taxpayer money." App. 66, 115. James, however, suffered no prejudice because the Court prevented the witnesses from giving any testimony about the eviction case. The first witness the Government called to testify about this subject, Gerald Groner, was not permitted to testify about any subject. He took the stand and, following a discussion between the Court and counsel, was excused. When the second witness, Indira Chumney, was summoned to discuss the eviction-related payment, the Court repeated: "We are not going there." App 611. Ms. Chumney testified about a bank statement reflecting James's $18,000 deposit, but was excused before the documentation was admitted and before presenting any other testimony, including testimony about what happened to the

---

[5] The District Court made no pre-trial ruling, but it asked the Government not to address the eviction lawsuit in its opening. At the same time, the Court reserved whether the Government could mention the evidence later in the trial. At the end of the first day of trial, the District Court expressed Rule 403 concerns regarding the eviction lawsuit, but once again, it made no ruling on the record. The Court re-expressed those concerns the next morning. Although the Court did not provide explicit ruling, its desire that the Government avoid mentioning the eviction lawsuit was clear.

funds. As a result, the Government's efforts regarding the eviction lawsuit did not result in the introduction of inadmissible evidence. James suffered no prejudice and thus there was no misconduct that requires us to disturb the verdict. Accordingly, the Court did not abuse its discretion in refusing to grant a mistrial.

C

We next address James's argument that the District Court erred in permitting the use of a chart summarizing the evidence of his funding requests. James asserts that the chart was inadmissible under Federal Rule of Evidence 1006. The problem with James's argument is two-fold. First, the chart was not admitted into evidence under Rule 1006. Rather, it was used as a demonstrative aid.[6] This is hardly a subtle

---

[6] Under Federal Rule of Evidence 611, a district court has the discretion to determine the manner and method of testimony during trial. "[T]he use of demonstrative evidence," such as charts, with proper limiting instructions, is one means to control testimony, United States v. Velasquez, 304 F.3d 237, 240 (3d Cir. 2002), and allows the court to "avoid [the] needless consumption of time," Fed. R. Evid. 611(a) & advisory committee's note; see also Abrams v. Lightolier Inc., 50 F.3d 1204, 1217 (3d Cir. 1995); United States v. Possick, 849 F.2d 332, 339 (8th Cir. 1988) (use of demonstrative charts "to aid the jury's comprehension is well within the court's discretion"); United States v. Gardner, 611 F.2d 770, 776 (9th Cir. 1980) (permitting use of chart summarizing assets, liabilities and expenditures in a tax case under Rule 611(a) because it contributed to clarity of presentation to jury and was reasonable method of presenting evidence).

evidentiary distinction. Second, when James was asked if he objected to the use of the chart as a demonstrative aid, he replied "no objection." App. 676. The record shows that James's no-objection response was an "intentional relinquishment or abandonment of a known right," in this case, to lodge an objection to a piece of evidence, and thus constitutes a waiver. United States v. Olano, 507 U.S. 725, 733 (1993). For example, James was not blindsided because the Government allowed him to review the chart in advance. In addition, when the Government asked to display the chart in "a large format" throughout trial, James again said that he was fine with this request. App. 676-77. Moreover, when the Government tried to use another chart as a demonstrative aide, James objected. The District Court then barred the use of the second chart. These and other portions of the record show that James's no-objection statement was knowing and intentional. See Virgin Islands v. Rosa, 399 F.3d 283, 291-93 (3d Cir. 2005) (considering the record to determine whether a failure to object is a knowing waiver).

When a right or rule is waived, "an appeal based on a non-adherence to the legal principle is precluded." Virgin Islands v. Rosa, 399 F.3d 283, 290 (3d Cir. 2005).[7] The rule

---

[7] A right may also be forfeited. A forfeiture occurs when a party fails to make a timely assertion of the right. Olano, 503 U.S. at 733. If the right was forfeited, Federal Rule of Criminal Procedure 52(b) provides a basis for review. Rosa, 399 F.3d at 290. Thus, if the defendant did not waive, the alleged error may be reviewed for "plain error," despite the absence of a timely objection. Olano, 503 U.S. at 733-34. In short, "where there was forfeiture, we apply plain error analysis; where there

12

that federal courts do not consider waived arguments is premised on the adversarial nature of our system of justice: that litigants, not the courts, choose the facts and arguments to present. Greenlaw v. United States, 554 U.S. 237, 244 (2008); Arizona v. California, 530 U.S. 392, 413 (2000) (observing that the principle of party presentation [is] basic to our system of justice). Thus, when a party clearly chooses a particular path, it will be respected and generally not further reviewed. Not only does this approach respect the adversarial system, in which the parties choose their arguments, but it also promotes finality. It encourages parties to present all relevant arguments to the trial court and binds them to their strategic choices. See Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist., 877 F.3d 136, 146 (3d Cir. 2017) (citing Fleishman v. Cont'l Cas. Co., 695 F.3d 598, 608 (7th Cir. 2012)). In addition, such preservation rules protect litigants from unfair surprise. Id. (citing Webb v. City of Philadelphia, 562 F.3d 256, 263 (3d Cir. 2009)); Holly Hill Farm Corp. v. United States, 447 F.3d 258, 267 (4th Cir. 2006). Finally, the rules promote judicial efficiency and prevent disturbing rulings based on grounds never argued to the district court. Caisson Corp. v. Ingersoll-Rand Co., 622 F.2d 672, 680 (3d Cir. 1980); see also Wood v. Milyard, 566 U.S. 463, 473 (2012) (reminding appellate courts "not to overlook" the "process and time investment" of the trial courts.).

To advance these goals, when a party has intentionally relinquished a right, he or she may not seek review of any alleged error flowing from such a waiver "absent exceptional circumstances." United States v. Rose, 538 F.3d 175, 179 (3d

---

was waiver, we do not." Rosa, 399 F.3d at 290-91 (quoting United States v. Mitchell, 85 F.3d 800, 807 (1st Cir. 1996)).

13

Cir. 2008). Put differently, the claimed error "is not susceptible to review." Id.; see also Olano, 507 U.S. at 733 ("mere forfeiture, as opposed of waiver, does not extinguish an 'error' under Rule 52(b)"). In short, when there is a waiver, we conduct no further analysis of the claimed error. Rosa, 399 F.3d at 290-91. Based on this record, James's affirmative no-objection statement to the chart's demonstrative use and his failure to dispute waiver on appeal, we conclude that he has waived any basis to seek review of that ruling.[8]

---

[8] Because the District Court allowed the chart only as a demonstrative aid and did not admit it into evidence under Federal Rule of Evidence 1006, we need not address James's argument that the chart was an improper summary under Rule 1006.

James also argued that the case agent who testified using the demonstrative aid offered inadmissible opinion testimony. James identifies no examples of this allegedly impermissible testimony. As a result, he has waived this issue on appeal. See, e.g., Fed. R. App. P. 28(a)(8) (to be preserved, the arguments must be supported specifically by "the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); Vente v. Gonzales, 415 F.3d 296, 299 n.3 (3d Cir. 2005); John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) (holding that an argument is waived when raised only "in passing (such as, in a footnote)" without "squarely argu[ing]" it); see also In re Application of Adan, 437 F.3d 381, 390 n.4 (3d Cir. 2006) (concluding that to preserve an issue, the party must "present substantive argument in support of [the] claim," (internal quotation marks omitted)). In any event, the absence of any examples is not surprising given that the witness provided no

14

## D[9]

opinions, but rather testified about only what he saw in the documents he reviewed.

James's opening brief also mentions another chart, identified as Exhibit 30. Exhibit 30 was not admitted into evidence or used as a demonstrative aid. The opening brief also makes reference to impermissible use of a summary chart by a forensic accountant, but James makes only passing reference to it and does not develop this argument. Such a passing reference does not preserve the issue for appeal. CIGNA Int'l, 119 F.3d at 1076 n.6.

James failed to preserve another argument. James's reply brief mentions for the first time that the forensic accountant relied on information outside the statute of limitations. "[W]here an issue is raised for the first time in a reply brief, we deem it insufficiently preserved for review before this [C]ourt." Garza v. Citigroup Inc., 881 F.3d 277, 284-85 (3d Cir. 2018) (citation omitted); In re Surrick, 338 F.3d 224, 237 (3d Cir. 2003); Lunderstadt v. Colafella, 885 F.2d 66, 78 (3d Cir. 1989)). Therefore, James failed to preserve any argument about time-barred material underlying the forensic accountant's testimony. Even if preserved, evidence of activity that predates the statute of limitations is relevant to proving the existence of the scheme to defraud, Pharis, 298 F.3d at 234, and, therefore, the accountant's testimony was proper.

[9] "[A] trial judge is in the best position to weigh the circumstances peculiar to each trial." United States v. Fiorilla, 850 F.2d 172, 176 (3d Cir. 1988). As a result, "we review the district court's order denying a mistrial," id. at 174, and its decisions regarding jury polling and dismissing a juror for cause for abuse of discretion. See e.g., United States v. Fattah,

James argues that the District Court abused its discretion when it declined to declare a mistrial after the jury poll revealed that a juror lacked the capacity to deliberate and when it substituted a juror with an alternate.

"[D]ecisions related to juror substitution are within the discretion of the trial court." United States v. Penn, 870 F.3d 164, 171 (3d Cir. 2017), cert. denied, 138 S. Ct. 700 (2018). District courts have "wide latitude in making the kind of credibility determinations underlying the removal of a juror," United States v. Thornton, 1 F.3d 149, 154 (3d Cir. 1993), because their "unique perspective at the scene . . . [places them] in a far superior position" to determine the proper course of action when issues of juror disqualification arise, United States v. Boone, 458 F.3d 321, 329 (3d Cir. 2006).

The Federal Rules of Criminal Procedure "currently . . . provide courts three options after excusing a juror for good cause during deliberations: (1) declare a mistrial; (2) proceed with [eleven] jurors; or (3) seat an alternate." United States v. Brown, 784 F.3d 1301, 1304 (9th Cir. 2015). These three

---

914 F.3d 112, 149-151 (3d Cir. 2019) ("We review the dismissal of a juror for cause for abuse of discretion . . . .We will reverse only if the decision to dismiss a juror was without factual support, or for a legally irrelevant reason." (internal citations and quotation marks omitted)); United States v. Wrensford, 866 F.3d 76, 89 (3d Cir. 2017) ("We review a district court's actions concerning jury polling for abuse of discretion" (citing Virgin Islands v. Hercules, 875 F.2d 414, 417 (3d Cir. 1989)).

16

options come from three rules: Rule 31, Rule 23, and Rule 24.[10] Rule 31(d) gives the defendant the right (and the district court the option) to poll the jury after it returns a verdict. Fed. R. Crim. P. 31(d). The purpose of jury polling is to provide "each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned and thus to enable the court and the parties to ascertain with certainty that a unanimous verdict has in fact been reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented." Hercules, 875 F.2d at 418 (citations and emphasis omitted). Where the poll demonstrates a lack of unanimity, Rule 31(d) leaves to the district court's discretion whether the jury should be directed to redeliberate or whether a mistrial is warranted. Fed. R. Crim. P. 31(d). Rule 23(b)(3) permits the court, at its discretion, to excuse a juror for good cause and allow a jury of eleven to return a verdict. Fed. R. Crim. P. 23(b)(3). Finally, under Rule 24(c), the court may replace a juror with an alternate where juror misconduct or incapacity arises, in which case the court must instruct the jury to begin anew with the alternate's addition. Fed. R. Crim. P. 24(c). Here, the Court polled the jury, identified good cause to excuse a juror, and excused the juror under Rule 23. The Court then replaced the juror with an alternate and gave instructions for the jury to begin deliberation anew consistent with Rule 24.

The District Court did not abuse its discretion in choosing to seat an alternate and in denying James's request

---

[10] We address the rules in the sequence in which the events each rule addresses arose before the District Court.

17

for a mistrial. Before the Court accepted the verdict,[11] it polled the jury and perceived a problem with Juror 8. The parties consented to further questioning of the juror after some debate. As a result of its observations and inquiry, the Court had concerns about the juror's candor, memory, and English language proficiency, which reflected that it questioned whether Juror 8 understood the verdict as read by the foreperson. Faced with these concerns about the juror, the Court acted within its discretion to excuse Juror 8.[12]

---

[11] A verdict is not final until is accepted by the Court. <u>See, e.g.</u>, <u>Hercules</u>, 875 F.2d at 417 ("[A] jury cannot be said to have reached a valid verdict until the result is announced in open court and no dissent is registered by any juror."); <u>see also</u> <u>Harrison v. Gillespie</u>, 640 F.3d 888, 899 (9th Cir. 2011) ("Because of the significance of the entire deliberative process, the jurors' preliminary votes in the jury room do not constitute a final verdict, even if they are unanimous . . . . Instead, the verdict must be rendered by the jury in open court and accepted by the court in order to become final. The court may also reject the jury's verdict if it is inconsistent or ambiguous."); <u>United States v. Chinchic</u>, 655 F.2d 547, 550 (4th Cir. 1981) ("[A]ny member of [the jury] is entitled to change his or her mind up until the time of the trial court's acceptance of the verdict."); <u>United States v. Love</u>, 597 F.2d 81, 84 (6th Cir. 1979) ("[T]he very existence of Rule 31(d) which provides for polling a jury after its verdict has been returned but before it is recorded compels the conclusion that a verdict is not final when announced.").

[12] During jury selection, the District Court instructed the venire that prospective jurors who answer "yes" to any voir dire question should raise their juror cards. Those jurors who raised their cards were questioned further. Because it seems that

18

James consented to the Court's decision to excuse Juror 8, but he objected to replacing the excused juror with an alternate. The Court replaced the excused juror with an alternate, over James's objection. The Court told the jury to "restart" its deliberations, reminded the jury that "there is no rush to reach a verdict," and that the verdict "must be considered and deliberate." App. 913-14. The Court also instructed that the new juror "should feel as though he is beginning anew, not . . . interposing or becoming someone who is interrupting an ongoing process." App. 914. The Court's decisions to excuse Juror 8, replace her with an alternate, and give instructions to the newly constituted jury all complied with Rules 23, 24, and 31 and were within its broad discretion. United States v. Wrensford, 866 F.3d 76, 89 (3d Cir. 2017) ("Our Court has adopted a rule vesting discretion in the trial court because a trial judge is in the best position to weigh the circumstances peculiar to each trial." (quoting United States v. Fiorilla, 850 F.2d 172, 176 (3d Cir. 1988) (internal quotation marks omitted))).

Taking Rules 23, 24, and 31 together, the District Court has the discretion to select among three options under the Federal Rules of Criminal Procedure, including seating an alternate and directing the jury to begin deliberations anew when it had good reason to think that a juror lacked the capacity to deliberate. Moreover, there is nothing in the record to suggest the decision to seat an alternate prejudiced James in

Juror 8 did not raise her card and was not subject to any individual questioning, there was no occasion during jury selection for the Court or the parties to learn of Juror 8's language difficulties.

19

any way. Thus, the District Court did not abuse its discretion in replacing Juror 8 with an alternate and instructing the jury to begin again.[13]

James also asserts that the juror substitution violated his Fifth Amendment right to due process and his Sixth Amendment right to an impartial jury trial. "[F]ederal courts have generally ruled that the substitution of a juror after deliberations have begun does not violate the United States Constitution, provided that defendants suffered no prejudice as a result." Claudio v. Snyder, 68 F.3d 1573, 1576 (3d Cir. 1995), amended (Dec. 1, 1995). Because all deliberating jurors heard all of the evidence and were properly instructed,[14] and there is nothing in the record suggesting that the deliberating jurors lacked impartiality or the competence to understand the evidence and the instructions, or that the excused juror tainted or otherwise impaired the reconstituted jury that delivered the verdict, the Court's substitution of Juror 8 with an alternate neither prejudiced James nor violated his Fifth Amendment due process right or Sixth Amendment right to an impartial jury.

III

For the foregoing reasons, we will affirm.

---

[13] James also argues that the District Court should have interrogated two jurors whom Juror 8 identified as being Spanish-speakers like her. The Court acted within its discretion to deny this request as there was no evidence to suggest these jurors had any language difficulties.

[14] We presume that the jury follows their instructions. Richardson v. Marsh, 481 U.S. 200, 211 (1987).