**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3239
_____

UNITED STATES OF AMERICA

v.

FRANCISCO NICHOLAS BRITO
a/k/a
Nicholas Brito
a/k/a
Jose,

                              Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:18-cr-00557-001)
District Judge: Honorable Claire C. Cecchi
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on July 8, 2020

Before: McKEE, BIBAS, and FUENTES, *Circuit Judges*

(Filed: September 21, 2020)
_____

Alison Brill                                    [ARGUED]
Office of Federal Public Defender
22 South Clinton Avenue
Station Plaza #4, 4th Floor
Trenton, NJ 08609

Lisa M. Mack
Office of Federal Public Defender
1002 Broad Street
Newark, NJ 07102

    *Counsel for Appellant*

Mark E. Coyne
John F. Romano                                  [ARGUED]
Office of the United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102

    *Counsel for Appellee*

———————————

OPINION[*]

———————————

BIBAS, *Circuit Judge.*

Every defendant deserves a fair shake at sentencing. Francisco Brito, a felon, claims that he changed his ways once his daughter was born. But in restating his criminal history, the sentencing judge erroneously implied that his criminal career continued *after* she was born. That honest factual mistake undermined his argument for leniency. His lawyer did not object, but the error was plain. So we will vacate and remand for resentencing.

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

# I. BACKGROUND

This appeal turns on the interplay between Brito's criminal history and the District Court's comments at sentencing. Understanding both is crucial.

## A. Brito's actual criminal history

Francisco Brito has a checkered past. He admits as much. For many years he stayed in this country illegally, dealing heroin. Those dealings form the backbone of his criminal record and deportation history.

1. *Brito's first removal from the United States*. Brito was first arrested in March 2001. He delivered 685 grams of heroin to an undercover officer, with predictable results. But though it was his first arrest, it was not his first drug deal; he later admitted that he had been selling heroin for more than a year. He pleaded guilty and was sentenced to forty-six months' imprisonment. Upon release, an immigration judge ordered him removed to the Dominican Republic; he was sent back there in 2004.

2. *Brito's second removal*. Brito soon returned to the United States illegally. In 2007, state and federal officials arrested him for packaging several kilos of heroin and importing many more. Both authorities charged him based on the same underlying conduct. In New Jersey, Brito pleaded guilty to two state offenses and was sentenced to about five years' imprisonment. In the Southern District of New York, he pleaded guilty to three federal drug crimes along with illegal reentry. After he served his time, Brito was removed to the Dominican Republic in 2013. That raised his lifetime deportation total to two.

3. *Brito's most recent illegal reentry.* Sometime after his second removal in 2013, Brito again returned to the United States illegally. He admits that this was wrong. But unlike his previous reentries, Brito claims this one was not for drugs, but for his family.

Brito's first child was born around 2007, shortly after he was last imprisoned. After he was removed to the Dominican Republic in 2013, his wife stayed in New York and struggled to care for their kids alone. His daughter has a learning disorder and reading impairment. His young son seems to have deficits in his speech, language, and motor skills. So Brito returned to the States sometime later to help his wife take care of them.

But Brito was here illegally. One day in 2018, he was arrested. So began this federal prosecution for illegal reentry.

## B. The sentencing hearing

Brito pleaded guilty to illegal reentry. Based on his criminal history, the Sentencing Guidelines recommended a range of seventy to eighty-seven months' imprisonment.

At sentencing, Brito asked for a minimal sentence, one well below the Guidelines range. The core of his plea for leniency was that he had committed no crimes since his children were born and that he had devised a plan to support them from afar. He wanted to return to the Dominican Republic quickly to do just that.

At sentencing, the District Court began by noting that it had "listened very carefully" to the parties' oral presentations and had read all of their written submissions. App. 51. It then recited Brito's criminal history, the key to this appeal:

> The Defendant's criminal history record consists of a drug conviction in the Eastern District in Pennsylvania during 2001, for which he was incarcerated in the Bureau of Prisons for 46 months. *Following service of this*

4

*sentence, the Defendant was deported.* In 2010, the Defendant was convicted in the Southern District of New York for two separate drug-related offenses for which he was incarcerated in the Bureau of Prisons for 6 years.

   *Following service of those sentences, the Defendant was again deported.* In 2011, the Defendant was sentenced to 5 years['] incarceration in the State of New Jersey for *yet another* drug-related offense. *Again, the Defendant was deported.*

App. 53 (emphases added).

Just after this statement, the judge asked: "Is there anything incorrect about that statement of the facts here?" *Id.* Brito's counsel replied: "I have to be honest, I wasn't making a time line when the Court was speaking. But if it tracks what's in the Presentence Report, then, yes, it is." *Id.*

The District Court denied Brito's request. After weighing each of the 18 U.S.C. § 3553(a) factors, it sentenced Brito to the bottom of the Guidelines range: seventy months. Brito now appeals.

## C. Standard of review

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under § 3742(a). We decline to review waived arguments, but we assess forfeited ones for plain error. *United States v. Olano*, 507 U.S. 725, 733–34 (1993).

We review preserved sentencing errors for abuse of discretion. *See United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009). If the claimed error is procedural, we must ensure that the district court did not fail to calculate (or miscalculate) the Guidelines range; treat the Guidelines as mandatory; gloss over the § 3553(a) factors; choose a sentence based on a clearly erroneous fact; or inadequately explain the chosen sentence. *Gall v. United States*,

552 U.S. 38, 51 (2007). But if it is a substantive challenge for reasonableness, we will affirm unless no reasonable court would have imposed that sentence for the reasons provided. *Tomko*, 562 F.3d at 568.

## II. WHEN THE DISTRICT COURT MISSTATED BRITO'S CRIMINAL HISTORY, COUNSEL'S "NO OBJECTION" WAS A FORFEITURE, NOT WAIVER

Though the parties agree that Brito's lawyer said "no objection" at sentencing, they disagree about its import. The Government claims that it was a waiver, citing our recent decision in *United States v. James*, 955 F.3d 336 (3d Cir. 2020). It reads *James* as creating a per se rule: "[W]hen a litigant 'affirmative[ly]' assents in the district court, then 'he has waived any basis to seek review' on appeal." Appellee's Br. 8 (quoting *James*, 955 F.3d at 345). Not so. *James* held no such thing. We will review for plain error.

### A. We assess waiver on the whole record, not with per se rules

In *Olano*, the Supreme Court laid out the distinction between forfeiture and waiver: "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" 507 U.S. at 733 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). To be a waiver, the failure to assert a right must be *intentional*, and the right relinquished must be *known*. Anything less is mere forfeiture. *See id.*

The only way to assess a waiver is to review the whole record. *See Gov't of the Virgin Islands v. Rosa*, 399 F.3d 283, 291 (3d Cir. 2005). *James* reaffirmed this approach. In *James*, an attorney refused to object to the use of a chart as a demonstrative aid. 955 F.3d at 341, 344. He affirmatively stated "no objection" to such a use. *Id.* We found that he had

6

waived any objection to the use of the chart—but not just because of his words. Instead, we looked to context. We noted that the attorney had had a chance to review the chart in advance. *Id.* at 344. He had objected to its being offered into evidence under Rule 1006. *Id.* He had even objected to using a *different* chart as a demonstrative aid later in the trial. *Id.* Finally, on appeal James never disputed that his lawyer had waived the claim. *Id.* at 345. "Based on this record … and his failure to dispute waiver on appeal," we explained, "James's affirmative no-objection statement to the chart's demonstrative use" amounted to waiver. *Id.*

*James* did not create a per se rule equating "no objection" with waiver. Given *Olano*, any such rule would be improper. So Brito's lawyer's statement does not itself prove waiver. Context controls.

**B. In context, Brito's "no objection" shows forfeiture, not waiver**

Context shows that Brito's counsel neither intentionally relinquished nor abandoned a known right. Rather, she failed to timely assert a right. That is forfeiture, not waiver. *See Olano*, 507 U.S. at 733. As she explained: "I have to be honest, I wasn't making a time line when the Court was speaking." App. 53. "But if [the statement] tracks what's in the Presentence Report, then, yes, it is" acceptable. *Id.*

As we will discuss, what the District Court said did *not* "track what's in the Presentence Report." Thus, Brito's lawyer never endorsed it. Even if she had, Brito's case is a far cry from James's. Brito's appellate counsel *does* dispute waiver on appeal. And the record here reflects counsel's honest error. That is a forfeiture, not waiver.

7

## III. THE DISTRICT COURT PLAINLY ERRED AT SENTENCING BY MISSTATING BRITO'S CRIMINAL HISTORY

Because Brito forfeited his objection to the court's account of his criminal history, we review for plain error. Brito must prove that there was an error; that the error was plain; that it prejudiced his substantial rights; and that not correcting the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Olano*, 507 U.S. at 732, 733–37. That burden is heavy, but Brito carries it.

### A. The District Court erred by claiming that Brito had been removed thrice

The District Court suggested that Brito had been removed from the United States three times. He had not. He was removed only twice: once in 2004 and once in 2013.

The District Court also suggested that this third removal was for distinct criminal conduct. That is also mistaken. While the charges were separate, they stemmed from a single arrest. The court erred in suggesting otherwise. It rightly noted that Brito had pleaded guilty in federal court to "two separate drug-related offenses for which he was incarcerated" for several years. App. 53. And it rightly noted that this sentence ended with his removal. *Id.* But then it made a mistake. The District Court said the New Jersey sentence was "for *yet another* drug-related offense." *Id.* (emphasis added). It was not "yet another"—not really. As noted above, it may have been another *charge* against Brito, but it stemmed from the same *conduct* as his federal conviction.

Compounding its error, the District Court then said that, following this New Jersey sentence, "[*a*]*gain*, the Defendant was deported." *Id.* (emphasis added). That implies a third

8

removal. But it was not a third removal—it was the same removal the court had noted before.

The Government asks us to read the District Court's statement differently. It claims that the final sentence—"Again, the Defendant was deported"—merely reinforced the removal already mentioned. But that reading ignores context, as well as the repetitive sentence structure the District Court chose. The court did an admirably thorough job at sentencing, but this statement was error.

## B. That error was plain

The true facts are undisputed. The sentencing judge said that Brito had three prior deportations. He did not; he only had two. And the conduct underlying the federal and state charges was not distinct. The error was plain.

## C. The error went to the core of Brito's claim for leniency, prejudicing him at sentencing

The District Court's error undermined Brito's case for leniency. The heart of his argument was that he had committed no crime since his daughter was born around 2007, shortly after his last arrest. The District Court's suggestion that he had another conviction and deportation after that arrest thus undercut his claim. The District Court was also troubled by his repeated serious convictions, explaining that "[i]t is a drug crime at the heart of everything." App. 53–54. And "given his history in this particular case, I think there is a need for specific deterrence in that this has happened in the past." App. 54. The court reiterated and again emphasized that point. So the District Court's error permeated its reasoning. That hurt Brito's case.

**D. Not correcting the error would undermine the integrity of judicial proceedings**

A sentence should not rest on factual errors that skew the amount of punishment needed. But that is what happened here. Brito advanced a compelling claim for leniency. Yet the District Court's factual error undermined his argument. That struck at the integrity of his sentence. We will thus vacate and remand for resentencing.

## IV. THE DISTRICT COURT MEANINGFULLY CONSIDERED BRITO'S ARGUMENTS FOR A VARIANCE

Brito also objects that the District Court was not thorough enough in considering his arguments for a variance. But the court considered his arguments several ways, each clear on the record:

(1) It noted that it had "received and reviewed" Brito's sentencing memorandum, where he made those arguments (App. 37);

(2) It noted that it had "listened very carefully" to his lawyer's oral argument on that point (*id.* at 51);

(3) It noted that it had "carefully considered … whether there should be any lessening of the incarceration" (*id.* at 55); and

(4) It "looked at the entirety of the [§]3553(a) factors" before explaining that a downward variance was not warranted for several specific reasons (*id.* at 55–56).

On our deferential review, we require no more. *See Gall*, 552 U.S. at 51. The District Court did not abuse its discretion.

10

## V. BRITO'S SENTENCE OF SEVENTY MONTHS WAS SUBSTANTIVELY REASONABLE

"It will be a rare case when it is clear that no acceptable reasoning can justify a given sentence." *United States v. Levinson*, 543 F.3d 190, 195 (3d Cir. 2008). That is because we defer greatly to the District Court's weighing of the § 3553(a) factors. *Tomko*, 562 F.3d at 568. Here, the District Court's reasons justify the sentence imposed.

The court's analysis was thorough. It weighed the § 3553(a) factors, commenting on the seriousness of this crime, Brito's extensive criminal history, and the need for both specific and general deterrence. After discussing each factor, it decided that the bottom of the range was fitting. *Id.* at 56. This is not the type of rare, objectively unreasonable sentence that we would reverse. We will not do so here.

\* \* \* \* \*

Francisco Brito illegally reentered the United States. The sentence he received was reasonable. But the court who imposed it made a factual error when reciting Brito's criminal history—an error that directly undermined his case for a variance.

Perhaps Brito's case for leniency will carry the day; perhaps not. But he deserves the chance to have his arguments heard and understood based on his actual criminal history. We will vacate and remand to allow just that.

11