**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 19-2931

———————

UNITED STATES OF AMERICA

v.

AMIN WADLEY, AKA Jamil Abdul Amin White, AKA B, AKA Mean,
Appellant

———————

No. 19-3242

———————

UNITED STATES OF AMERICA

v.

REGINALD WHITE, also known as Twin also known as T.
Appellant

———————

No. 20-3189

———————

UNITED STATES OF AMERICA

v.

TYRIK UPCHURCH, aka RED aka REDS aka REEKY,
Appellant

———————

No. 21-1917

———————

UNITED STATES OF AMERICA

v.

BASIL BEY, also known as BLACK also known as BAS,
                                                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-17-cr-00208-001/006/007/008)
District Judge:  Honorable Gerald A. McHugh

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 4, 2022

_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, SHWARTZ, <u>Circuit</u> <u>Judge</u>, and PRATTER, <u>District</u>
<u>Judge</u>.[*]

(Filed: April 5, 2022)
_____

OPINION[*]
_____

CHAGARES, <u>Chief</u> <u>Judge</u>.

An indictment charged ten defendants with engaging in a conspiracy to distribute

heroin and crack cocaine from approximately April 2015 through March 2017.  Four

defendants — Basil Bey, Tyrik Upchurch, Amin Wadley, and Reginald White —

proceeded to trial and were convicted by the jury.  The defendants raise a number of

_____

[*] Honorable Gene E.K. Pratter, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.
[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

2

issues on appeal to challenge their respective judgments, including the common issue of whether the District Court abused its discretion by allowing lay testimony and summary charts that purported to calculate the aggregate weights of drugs sold by each defendant during the conspiracy. For the following reasons, we will affirm the judgments of the District Court.

I.

We write primarily for the parties and recite only the facts essential to our decision. In 2014, the Federal Bureau of Investigation ("FBI") began investigating the distribution of heroin and crack cocaine in South Philadelphia. The FBI discovered that members of a conspiracy were selling large quantities of drugs in amounts that normally would not catch the attention of the FBI. The FBI focused primarily on two cell phones ("Phone One" and "Phone Two") that were used by a group to make such sales. Members of the conspiracy took "shifts" working the phones to sell drugs. Wadley Amended Appendix ("App.") 278, 327.[1] Based on call records obtained through a pen register, Phone One made and received 389,432 calls and texts from April 1, 2014, to September 7, 2016. Ninety-six percent of those calls lasted less than one minute. The FBI also learned that members of the conspiracy packaged heroin in blue glassine bags and crack cocaine in small zip lock bags, neither with a stamp on the bag.

---

[1] Most citations in this opinion come from defendant Wadley's amended appendix. We refer to Wadley's appendix as "App." and specifically note when citing to a different defendant's appendix.

The FBI used a variety of methods to gather information during its investigation, including controlled buys through confidential informants, physical and video surveillance, pen registers, arrests by local police,[2] and search warrants.[3] Most relevant to this appeal, the FBI obtained a wiretap of Phone One from September 12, 2016 through Nov. 4, 2016. The FBI then wiretapped Phone Two after the defendants started using a new phone in November 2016. In total, the wiretaps lasted 76 days.

Given the length of the alleged conspiracy, the FBI used a portion of the wiretap to estimate the quantity of drugs each defendant was responsible for during the entire conspiracy. Special Agents kept track of drug sales made from 6:00 a.m. to 9:00 p.m. on 19 days of the wiretap, or 25% of the total wiretap. In situations where a caller failed to specify the quantity or type of drug they wanted (or both), Special Agents determined whether the caller was a repeat customer and, if so, whether the agents had historical information from previous calls about the drug and quantity that customer usually purchased.[4] The Special Agents used conservative estimates in these cases. And if a known customer called to arrange a meet up but did not specify the order, the agents attributed one packet of the customer's drug of choice. The Special Agents multiplied

---

[2] Several of the defendants were arrested by the Philadelphia Police Department and were found in possession of drugs, as well as Phone One and Phone Two.

[3] On December 6, 2016, the FBI executed a search warrant of a house where Wadley resided on Greenwich Street. They found heroin, grinders, scales, drug packaging, and empty blue bags.

[4] The agents tracked repeat customers using their phone numbers.

the number of packets sold during the analyzed calls by 0.3 grams for crack and 0.04 grams for heroin (the average weight of a packet based on the drugs recovered through controlled purchases and police seizures). Once the Special Agents calculated the weight of crack and heroin sold for the 19-day sample, they divided that number by 19 and estimated that the conspiracy sold an average of 4.418 grams of heroin and 12.55 grams of crack cocaine per day. The Government evaluated the number of days each defendant was a member of the conspiracy[5] and multiplied that number by the averages of crack and heroin sold to arrive at the quantity of crack and heroin that each defendant was responsible for during the conspiracy.

A grand jury charged the defendants with multiple counts related to conspiracy to distribute heroin and crack cocaine. Bey, Upchurch, Wadley, and White proceeded to trial. The Government sought to present the above-described methodology to prove the weight of drugs each defendant was responsible for during the conspiracy. The Government planned to elicit lay testimony from three Special Agents who developed the methodology and present a summary chart of the above-described calculations.

Before the Government presented this testimony and summary chart to the jury, the District Court conducted a lengthy hearing outside the presence of the jury. The purpose of the hearing was to provide information "relevant to the ability of Defense counsel to understand what the summary represents" and to ensure that the methodology utilized by the Special Agents was "very clear." App. 1571; 1573. The day before the

---

[5] It alleged that Bey participated for 604 days, Upchurch for 477, Wadley for 74, and White for 240.

hearing, the District Court provided questions it planned to ask the agents and invited the defense to submit additional questions. The Government and the District Court then questioned the three Special Agents at the hearing about how they calculated the estimated quantity of drugs sold by the defendants during the conspiracy, and the agents described their methodology.

The District Court determined that this evidence was admissible at the hearing. The trial proceeded, and the Government presented the Special Agents' testimony about their calculations as well as the summary charts. Before the jury deliberated, the District Court provided the following instruction:

> The Government has shown you certain charts and summaries in order to help explain, illustrate, or summarize its interpretation of the evidence. These charts and summaries . . . were not admitted into evidence and they are not themselves proof of any facts. They are demonstrative aids and as such are not binding on you in any way. If you conclude that they represent a fair and reasonable interpretation of the evidence you have heard, you may consider them to aid your deliberations. If you conclude they are not a fair and reasonable interpretation of the evidence you have heard, you should disregard them. Once again, in every case it is for you, the jurors, to decide the facts.

App. 2195–96. The District Court further instructed the jury that the "opinions of [the Special Agents] should receive whatever weight you think is appropriate given all the other evidence" and that the jurors "might find [the agents' opinions] helpful" or might be "equally capable of understanding" the evidence on their own. App. 2182–83.

The jury convicted all defendants of all counts. The jury then answered special interrogatories and determined that Bey, Upchurch, and White were each responsible for the sale of at least 280 grams of crack cocaine and at least 100 grams of heroin, and

6

Wadley was responsible for at least 28 grams of crack cocaine and at least 100 grams of heroin.[6] All four defendants timely appealed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We review a district court's decision regarding the admissibility of evidence, including the claim that the District Court admitted lay opinion testimony in violation of Federal Rule of Evidence 701(c), for an abuse of discretion. United States v. Ayala, 917 F.3d 752, 760 (3d Cir. 2019); United States v. Shaw, 891 F.3d 441, 453 (3d Cir. 2018). Under our abuse of discretion review, we will overturn a trial court's evidentiary ruling only if the "decision is 'arbitrary, fanciful, or clearly unreasonable'— in short, where 'no reasonable person would adopt the district court's view.'" United States v. Green, 617 F.3d 233, 239 (3d Cir. 2010) (quoting United States v. Starnes, 583 F.3d 196, 214 (3d Cir. 2009)). But to the extent our ruling is based on an interpretation of the Federal Rules of Evidence, our review is plenary. United States v. Georgiou, 777 F.3d 125, 143 (3d Cir. 2015).

## III.

The defendants argue that the District Court abused its discretion by allowing the Government to present lay opinion testimony and summary charts purporting to calculate

---

[6] The jury convicted Bey of the lesser-included quantity of 100 grams or more of heroin (as opposed to the 1000 grams charged) and convicted Wadley of the lesser included quantity of 28 grams of crack cocaine (as opposed to the 280 grams charged).

7

the aggregate weights of drugs sold by each defendant during the conspiracy. We disagree.

Rule 701 permits lay witnesses to testify to the extent that their opinions are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. We have held that "Rule 701 means that a witness is only permitted to give her opinion or interpretation of an event when she has some personal knowledge of that incident." United States v. Fulton, 837 F.3d 281, 291 (3d Cir. 2016). Lay witnesses may not opine concerning what conclusions to draw from the facts such that the testimony "usurps the jury's role as fact finder," or offer an opinion which the witness is in no "better position than the jurors to form." Id. at 291–92. Rule 701 ensures that "a party will not evade the expert witness disclosure requirements set forth in . . . Fed. R. Crim. P. 16 by simply calling an expert witness in the guise of a layperson." Hirst v. Inverness Hotel Corp., 544 F.3d 221, 227 (3d Cir. 2008) (quoting Fed. R. Evid. 701 advisory committee's note to 2000 amendments).

Rule 1006 permits the "use [of] a summary, chart, or calculation to prove the content of voluminous writings [or] recordings . . . that cannot be conveniently examined in court." Fed. R. Evid. 1006. Whether to admit summary charts is "committed to the sound discretion of the trial court, which in this context is very broad." United States v. Bansal, 663 F.3d 634, 668 (3d Cir. 2011). And pursuant to Rule 611, "a district court has

8

the discretion to determine the manner and method of testimony during trial." United States v. James, 955 F.3d 336, 344 n.6 (3d Cir. 2020) (citing Fed. R. Evid. 611).

The FBI's methodology in this case included personal observation by Special Agents of wiretapped calls, followed by basic math to determine an estimated average of drugs sold per day. The testimony helped the jury with the onerous task of determining the quantity of drugs for which each defendant was responsible. Rather than usurping the role of the jury, the agents' testimony provided calculations that jurors were not in a position to keep track of and conduct themselves. And such calculations are not the exclusive or even primary province of an expert. See Georgiou, 777 F.3d at 143–44 (holding that lay witness testimony, which included "comparisons of stock quantities and prices" and "provided factual information and summaries of voluminous trading records that [the witness] had personally reviewed," did not "require prohibited scientific, technical, or other specialized knowledge"); see also Ryan Dev. Co., L.C. v. Ind. Lumbermens Mut. Ins. Co., 711 F.3d 1165, 1170 (10th Cir. 2013) (determining that the district court reasonably concluded that accountant witnesses could offer lay testimony given that the accountants "used basic arithmetic, personal experience, and no outside expert reports in calculating lost income and other claims for coverage"); Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1124 (10th Cir. 2005) ("Taking a simple average . . . though technically a statistical determination, is not so complex a task that litigants need to hire experts in order to deem the evidence trustworthy."). We therefore cannot say that

9

the District Court's decision to allow the Special Agents' opinion testimony was "arbitrary, fanciful, or clearly unreasonable."[7] Starnes, 583 F.3d at 214.

The summary charts were similarly helpful to the jury in that they avoided the need to play thousands of wiretapped calls, which could not be "conveniently examined in court." Fed. R. Evid. 1006. Moreover, Rule 611(a) allows district courts to "exercise reasonable control over the mode . . . of examining witnesses and presenting evidence so as to . . . make those procedures effective for determining the truth [and] avoid wasting time," Fed. R. Evid. 611(a)(1)–(2). We have recognized that "the use of demonstrative evidence, such as charts, with proper limiting instructions, is one means to control testimony" under Rule 611(a). United States v. James, 955 F.3d 336, 344 n.6 (3d Cir. 2020) (cleaned up). The demonstrative chart must, however, "be linked to evidence previously admitted and usually is not itself admitted into evidence." United States v. Milkiewicz, 470 F.3d 390, 397 (1st Cir. 2006). The Government's summary charts in this case were not admitted as evidence, and were linked to and supported by evidence, including sample wiretapped calls and testimony from the Special Agents. The District

---

[7] To the extent Special Agent Clinton Chlebowski's testimony explaining the Government's calculations in the summary charts exceeded his personal knowledge, we cannot say that the District Court abused its discretion in allowing such testimony under Rule 611 since the calculation was based on competent facts presented at trial by Special Agents Desiree Maxwell and James Krieger regarding their personal analysis of 19 days of calls. See United States v. Scales, 594 F.2d 558, 564 (6th Cir. 1979) (explaining that "a summary [is improper under Rule 611 if it] present[s] incompetent facts"); United States v. Baker, 10 F.3d 1374, 1412 (9th Cir. 1993) ("We conclude, however, that admitting [the witness'] testimony [calculating drug amounts] was a valid exercise of the district court's discretion under Fed. R. Evid. 611(a)."), abrogated in part on other grounds by United States v. Nordby, 225 F.3d 1053 (9th Cir. 2000).

Court also provided a thorough jury instruction on the charts.[8] The District Court thus did not abuse its discretion in allowing presentation of the summary charts.

The defendants argue that the Special Agents provided expert testimony that constituted "specialized knowledge" and constituted a statistical analysis requiring a reliability determination. See Fed R. Evid. 702. But the agents used their personal observation of the calls from 19 days, plus basic math to come up with an estimated average.[9] The defendants have not explained how this process required specialized knowledge apart from basic addition, multiplication, and division. See Bryant, 432 F.3d at 1124; Fed. R. Evid. 701 advisory committee's note to 2000 amendments (cleaned up) ("[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field."). The defendants' argument that the Special Agents' testimony was not based upon their "perceptions" is similarly unavailing. The Special Agents testified about their personal perceptions of the calls from the 19 days. They did not claim to know what occurred on

---

[8] When the jury asked to see the summaries and charts during its deliberation, the District Court responded: "Because the timeline board and summary of dates (19 days) were demonstrative aids and not substantive evidence in their own right, they are not something that I can send into the jury room." App. 2214.

[9] No party asserts that the selection of the number of days reviewed is statistically based. We offer no opinion on whether such statistical basis is required, particularly here where the selection of the number of days and the review process was subject to rigorous examination and the jury was free to give whatever weight to the testimony it deemed warranted.

11

calls that they did not monitor, but they presented basic mathematics to provide an estimate.

The defendants finally argue that permitting the Special Agents to testify as lay witnesses allowed the Government to circumvent Federal Rule of Criminal Procedure 16's disclosure.[10]  Rule 16 provides that, "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial."  Fed. R. Crim. P. 16(a)(1)(G).  We have already held that the Special Agents' testimony was proper lay testimony under Rule 701.  But even if Rule 702 applied, the District Court's extensive hearing, which previewed the Special Agents' proposed testimony to the defense, eliminated any prejudice to the defendants.  Any Rule 16 violation was therefore harmless.  See United States v. Jannotti, 729 F.2d 213, 220 n.2 (3d Cir. 1984) (an error is harmless when "we have a sure conviction that the error did not prejudice the defendants.").  We will accordingly affirm the judgment of the District Court.[11]

---

[10] The defendants also argue that the Special Agents' testimony went to an ultimate issue of the case in violation of Rule 704(b), which prohibits an expert witness from stating "an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."  Fed. R. Evid. 704(b).  Because we hold that the Special Agents' testimony was properly treated as lay testimony, we need not address this argument.

[11] We have considered all other issues raised by each defendant on appeal and determine that they are without merit.

The District Court did not abuse its discretion in allowing the Special Agents to testify about the code words used by the drug organization based on their knowledge of the

investigation. See United States v. De Peri, 778 F.2d 963, 977 (3d Cir. 1985). Nor did the District Court abuse its discretion in allowing Agent Chlebowski to provide overview testimony concerning the investigation in which he was personally involved. See United States v. Lacerda, 958 F.3d 196, 208 (3d Cir. 2020).

Sufficient evidence supported the jury's finding that the defendants were engaged in a conspiracy to sell drugs, as opposed to independent contractors, see United States v. Gibbs, 190 F.3d 188, 197–98 (3d Cir. 1999), and that 100 grams of heroin and 280 grams of crack cocaine could be attributed to both White and Bey, see United States v. Tran, 519 F.3d 98, 106–07 (2d Cir. 2008).

The District Court did not commit plain error in its jury instructions for determining drug amounts. The instructions and verdict form conformed with United States v. Williams, 974 F.3d 320, 362 (3d Cir. 2020), which directs that a jury determining drug quantity may only attribute to a defendant a quantity that was "within the scope of, or in furtherance of, the conspiracy and [was] reasonably foreseeable to the defendant as a consequence of the unlawful agreement." Id. at 366 (emphasis added). The jury instruction and the verdict form in this case required that the jury only attribute drug quantities that were involved in the conspiracy and were either attributable to or foreseeable to the defendant. Thus, the fact that the jury instruction included two elements after the "and" versus only one makes no difference, as the requisite conjunctive and disjunctive elements were retained.

The District Court also did not commit plain error in its application of the "stash house" sentencing enhancement to Wadley's sentence. The District Court concluded that the Greenwich Street residence contained "things related to the conspiracy." App. 2331. It was thus not plain error for the District Court to conclude that Wadley maintained the premises "for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12).

And the District Court also did not commit plain error in attributing 279 grams of cocaine base to Wadley at sentencing based on an extrapolation that had an "adequate factual basis." See United States v. McCutchen, 992 F.2d 22, 23 (3d Cir. 1993).

Finally, even if "sentencing manipulation" were a recognized basis for relief (and we have not recognized that it is), the Government did not engage in sentencing factor manipulation by conducting a multi-year investigation to "identify the organization, the breadth, the scope of it, the organization of it, and the locations they used so that we can most effectively target that organization." App. 1221. See United States v. Sed, 601 F.3d 224, 231 (3d Cir. 2010).

13

## IV.

For the foregoing reasons, we will affirm the District Court's judgment.