**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2962
_____

UNITED STATES OF AMERICA

v.

RAO DESU,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 3-18-cr-00613-001)
District Judge: Honorable Michael A. Shipp
_____

Submitted: June 25, 2021

Before: CHAGARES, *Chief Judge,* PORTER, and ROTH,
*Circuit Judges*.

(Filed: January 7, 2022)
_____

Jay R. Nanavati
Kostelanetz & Fink
601 New Jersey Avenue, N.W., Suite 620
Washington D.C. 20001

Caroline Rule
Kostelanetz & Fink
7 World Trade Center, 34th Floor
New York, New York 10007

       *Counsel for Appellant Rao Desu*

Mark E. Coyne
John F. Romano
Office of the United States Attorney
970 Broad Street, Room 700
Newark, New Jersey 07102

       *Counsel for Appellee United States of America*

_____

OPINION OF THE COURT
_____

PORTER, *Circuit Judge*.

    A jury found that Rao Desu underreported his cash earnings at two of his pharmacies and convicted him of tax fraud. Among his arguments on appeal, Desu asserts that the District Court erred when it denied his motion for an evidentiary hearing as provided in *Franks v. Delaware*, 438 U.S. 154 (1978). His appeal presents the opportunity to clarify the standard we

should use to review a district court's application of the two-element test provided in *Franks* for deciding motions for evidentiary hearings. For the first element, we will review for clear error a district court's determination regarding whether a false statement in a warrant application was made with reckless disregard for the truth. For the second element, we will review de novo a district court's substantial-basis review of a magistrate judge's probable cause determination. Under this standard of review, the District Court did not err in denying Desu's motion for an evidentiary hearing. All of Desu's remaining arguments fail, so we will affirm the District Court's judgment.

I

For several years, Desu co-owned Heights Pharmacy with Darshna Desai. Desai managed the pharmacy's operations. Each day, Desai would collect the pharmacy's cash earnings and deposit only a small portion of that cash into the pharmacy's bank account, leaving the rest undeposited. After paying for certain items out of the undeposited cash, such as part of Desai's salary and unused vacation time, Desai split the remaining undeposited cash between herself and Desu. Desai delivered Desu's portion to Desu's home. By keeping the cash out of the Heights Pharmacy bank account, Desu and Desai kept the cash earnings off Heights Pharmacy's general ledger. In turn, Heights Pharmacy's accountants underreported the pharmacy's revenue on Heights Pharmacy's tax returns by relying on the revenue figures found in the general ledger. This underreporting on Heights Pharmacy's tax returns led to underreported net income on Desu's individual income tax returns.

To keep track of their undeposited cash earnings, Desai recorded the amount of undeposited cash on a copy of each

3

day's bank deposit slip using a coding system. Desai retained the copies for a period of time before destroying them. Desai also maintained a notebook in which she recorded the cash split between her and Desu. Following a government investigation, Desai and her husband, Pritesh Desai, pleaded guilty and agreed to testify against Desu.

In addition to Heights Pharmacy, Desu co-owned a second pharmacy, Arthur Avenue Pharmacy, with Manish Pujara. Similar to the scheme at Heights Pharmacy, Desu and Pujara kept the cash earnings off Arthur Avenue Pharmacy's general ledger by not depositing the cash into Arthur Avenue Pharmacy's bank account. The general ledger's understatement of revenue enabled Desu to underreport his income on his individual tax return. Like the Desais, Pujara testified against Desu to obtain a favorable outcome with the government.

A grand jury indicted Desu on six counts, including two counts of violating 18 U.S.C. § 371 for conspiracy to "imped[e], impair[], obstruct[], and defeat[] the lawful government functions of the IRS to ascertain, compute, assess, and collect income taxes." App. 94, 100. It also indicted Desu on four counts of willfully assisting in the preparation and presentation of materially false tax returns. A jury convicted Desu on all counts. Desu timely appealed.[1]

Desu makes six arguments on appeal: (1) the jury received a faulty government exhibit for use in its deliberations, thus entitling him to a new trial; (2) two counts in the indictment fail to state an offense under *Marinello v. United*

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

4

*States*, 138 S. Ct. 1101 (2018); (3) the District Court erred in excluding testimony regarding the Desais' cash transactions on relevancy grounds; (4) the District Court erred in denying an evidentiary hearing under *Franks v. Delaware*; (5) the government constructively amended the indictment; and (6) the District Court erred at sentencing by failing to account for certain deductions and exclusions in Desu's income when calculating the tax loss incurred by the government. All six arguments fail.

II

A

Desu first argues that he should have received a new trial because the jury received a faulty copy of Exhibit 450 for use in its deliberations. Exhibit 450 was a DVD that was supposed to contain thousands of pages of bank records for Heights Pharmacy's bank account. But the copy was missing records for several years in the relevant time period.

At the close of evidence and before deliberations began, Desu's counsel signed a statement addressed to the District Court affirming that "[c]ounsel for the . . . Defendant . . . have reviewed the exhibits and agree that all exhibits in the Court's possession are the exhibits that have been admitted and moved into evidence and should therefore be provided to the jury for deliberations." App. 2283. After trial, the government realized that Exhibit 450 was incomplete and notified the District Court and Desu.

Desu moved for a new trial based on the government's revelation. He argued that two exhibits summarizing the total cash skimmed, Exhibits 503 and 505, should not have been

5

admitted because they relied on the records missing from Exhibit 450. Desu also argued that the missing bank records would have shown cash deposits appearing in Heights Pharmacy's bank account. Evidence of these deposits allegedly would have rebutted the government's theory that Desu and Desai skimmed most of the cash from Heights Pharmacy. The District Court held that Desu had waived his two arguments concerning Exhibit 450's defect when his counsel certified that they had reviewed the exhibits.

B

When a defendant fails to "lodge a contemporaneous objection" and instead "raise[s] the issue for the first time in [a] motion for a new trial," we review the district court's ruling for plain error. *United States v. Kolodesh*, 787 F.3d 224, 230 n.4 (3d Cir. 2015). Under that standard, we will grant relief to Desu if:

> (1) there is an "error"; (2) the error is "clear or obvious, rather than subject to reasonable dispute"; (3) the error "affected the appellant's substantial rights, which in the ordinary case means" it "affected the outcome of the district court proceedings"; and (4) "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

*United States v. Marcus*, 560 U.S. 258, 262 (2010) (alteration in original) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

Waiver is an "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725,

6

733 (1993) (internal quotation marks omitted) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). We will reverse the District Court only if it clearly or obviously erred by ruling that Desu's counsel's certification was an intentional relinquishment of a known right. *See Marcus*, 560 U.S. at 262. The District Court ruled that Desu's counsel's certification demonstrated knowledge of the right to object to the use of Exhibit 450 ("[we] have reviewed the exhibits," App. 2283) and the intent to forego an objection (the exhibits should "be provided to the jury for deliberations," App. 2283). Even assuming an error by the District Court, the error was not clear or obvious. *See United States v. James*, 955 F.3d 336, 344–45 (3d Cir. 2020) (holding that a defendant had waived an argument by failing to object to the admission of a demonstrative aid when the government allowed the defendant to review the aid in advance of trial and the defendant objected to a similar demonstrative aid). Given our holding on the second *Olano* prong, we do not need to address the remaining steps of the plain-error standard.

## III

### A

Desu next argues that the two counts in the indictment alleging violations of 18 U.S.C. § 371 fail to state an offense. In those counts, the government alleges that Desu conspired "to defraud the IRS by impeding, impairing, obstructing, and defeating the lawful government functions of the IRS to ascertain, compute, assess, and collect income taxes," a crime known as a *Klein* conspiracy.[2] App. 94, 100. Desu claims that

---

[2] The counts allege that Desu violated 18 U.S.C. § 371, which prohibits conspiring "to defraud the United States, or any

7

both counts fail to state an offense under *Marinello v. United States*, 138 S. Ct. 1101 (2018). In *Marinello*, the Supreme Court held that to convict someone of obstructing or impeding the administration of the Internal Revenue Code under 26 U.S.C. § 7212(a), the government must prove that a "'nexus' [existed] between the defendant's conduct and a particular administrative proceeding, such as an investigation, an audit, or other targeted administrative action." *Id.* at 1109. Desu claims that both counts fail to state an offense because they do not allege that an investigation was pending when he committed the conspiracies as required by *Marinello* in the separate but similar statute.

According to Federal Rule of Criminal Procedure 12(b)(3), a party must raise a claim for "failure to state an offense" by "pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3).

The grand jury indicted Desu on October 11, 2018, nearly seven months after the Supreme Court issued *Marinello*

---

agency thereof in any manner or for any purpose." The language in the indictment differs from the statutory language and comes from *United States v. Klein*, 247 F.2d 908 (2d Cir. 1957), which held that "obstruct[ing] one of [the IRS's] lawful governmental functions by deceit" is a crime under 18 U.S.C. § 371. *Id.* at 916 (internal quotation marks omitted) (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)); *see also United States v. McKee*, 506 F.3d 225, 239 (3d Cir. 2007) (recognizing the so-called *Klein* conspiracy).

8

in March 2018. Desu did not raise his *Marinello* argument until he filed a post-conviction motion for acquittal, so it was untimely under Rule 12. The District Court refused to consider Desu's *Marinello* argument because he failed to raise it before trial and Desu did not show "good cause" for his untimeliness.

B

We review a district court's good cause ruling for abuse of discretion. *Davis v. United States*, 411 U.S. 233, 245 (1973). If we uphold a district court's "good cause" ruling, we will not consider the defendant's argument. *See United States v. Fattah*, 858 F.3d 801, 807 (3d Cir. 2017) ("[W]e will not consider any unpreserved arguments absent 'good cause.'" (quoting Fed. R. Crim. P. 12(c)(3))).

To establish good cause for his untimeliness, Desu argued that he needed to wait to use his *Marinello* argument while "lower courts determine[d] the implications of *Marinello* on *Klein* conspiracies." App. 2292. The District Court did not err, let alone abuse its discretion, in rejecting Desu's excuse. Desu waited for months to use an argument that he knew he could make at any time prior to the deadline imposed by Rule 12. Holding out for a more favorable legal landscape is not an appropriate excuse for delay. *See United States v. Daniels*, 803 F.3d 335, 352 (7th Cir. 2015) ("That additional case law later is handed down which may better support an argument does not constitute 'good cause.'").

9

IV

A

For his third argument, Desu claims the District Court erred by denying his motion in limine "to permit evidence relevant to the disposition of cash." App. 160. Desu wanted Desai, Pritesh Desai, and "third-party witnesses" who "engaged in monetary transactions with the Desais" to testify about the cash transactions. App. 160. Desu argued that the testimony about the Desais' disposal of their cash was "relevant as it goes to the heart of [Desu's] defense that the stream of cash that is alleged to have been 'skimmed' and unreported from [Heights Pharmacy] is significantly less than the ocean of cash with which the Desais were flooded." App. 160.

According to Desu, there was a discrepancy between the amount of cash Desai allegedly collected from the cash skim and the amount of cash located in the Desais' bank accounts. This discrepancy could have meant that Desai actually skimmed more cash from Heights Pharmacy than the government alleged she did. Assuming the total cash skim from Heights Pharmacy remained the same, if Desai skimmed more cash than the government alleged, then Desu skimmed less, or none at all. This inference could have suggested that Desai did all the skimming and falsely implicated Desu in the scheme. Alternatively, the discrepancy between the alleged cash skimmed by Desai and the total cash in the Desais' bank accounts could have suggested that "there is some yet unexplained alternative source of the Desais' laundered cash which has not been disclosed." App. 163. To avoid scrutiny of this undisclosed source of cash, the Desais "point[ed] the finger at [Desu]." App. 163.

Before ruling on the motion, the District Court pressed Desu's counsel for the names of the third-party witnesses and their cash transactions with the Desais. Desu's counsel listed the following individuals:

1. Tom Rillo: "He will testify that he received $50,000 of cash from the Desais." App. 1307.

2. Pritesh Desai's father: "[H]e would . . . testify to the fact that he received cash from the Desai family. I believe it was . . . $10,000, approximately." App. 1307.

3. Mukesh Desai: This person "received money from the Desais for . . . the purchase of a home." App. 1308.

4. Saumil Patel: "He received about $42,000 in cash from the Desais." App. 1309.

The government opposed Desu's motion in limine, arguing that Desu sought to use the evidence of the cash transactions not to examine "the source of the [Desais'] money," but instead to examine "how the Desais spent their share of the money." App. 1311. The District Court agreed with the government and denied Desu's motion in limine on relevancy grounds.

B

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "We review evidentiary rulings for abuse of discretion." *United States v. DeMuro*, 677 F.3d 550,

11

557 (3d Cir. 2012) (citation omitted).

Evidence of a discrepancy between the amount of cash Desai skimmed and the amount of cash in the Desais' bank accounts might have been relevant to the case. Evidence of the discrepancy could also imply that the Desais wanted to point the finger at Desu to avoid scrutiny of their wrongdoing. But Desu was not seeking to introduce evidence of two amounts of cash and the resulting disparity between them. Rather, he was seeking to introduce evidence of how the Desais disposed of a small amount of the cash they possessed. Desu wanted four third-party witnesses to describe instances where the Desais disposed of a few hundred thousand dollars in a conspiracy in which the government accused Desai of skimming over one million dollars. Evidence of how the Desais disposed of a fraction of the cash skim does not suggest how much money they had in their bank accounts. Further, this evidence does not indicate that any numerical discrepancy existed between the bank-account total and the cash-skim total. Thus, the evidence of the Desais disposing of their cash had no "tendency" to make a consequential "fact more or less probable." Fed. R. Evid. 401.[3]

V

A

Desu also argues that the District Court erred in refusing to grant him an evidentiary hearing under *Franks v. Delaware*,

---

[3] Desu argues that the District Court abused its discretion in denying his motion in limine under Federal Rule of Evidence 404(b). We do not need to reach this argument because the District Court properly denied the motion in limine on relevancy grounds.

438 U.S. 154 (1978). During the investigation of Desu prior to his indictment, Kenneth Connaughton, a special agent with the Department of Justice, applied for a warrant to search Desu's home. To establish probable cause for the warrant, Connaughton submitted an affidavit detailing evidence of Desu's wrongdoing. The affidavit relied on evidence seized from Desai's residence under a previous search warrant; witness interviews with Desai, Pritesh Desai, and others; a notebook provided by Desai containing a record of the cash skim; an interview with Desu; and an audio-recording of a conversation between Desu and Desai. A magistrate judge issued the warrant. After the government executed the search warrant, Desu filed a motion for a *Franks* hearing with the goal of suppressing the evidence seized as a result of the search. Desu argued that Connaughton made material omissions and misstatements in the affidavit with reckless disregard for the truth. The District Court orally denied Desu's motion for a *Franks* hearing. It found that each of the supposed omissions or misstatements was not made with reckless disregard for the truth or was not material.

B

To obtain a *Franks* hearing, a defendant must establish (1) that a warrant application contained false statements made with reckless disregard for the truth and (2) that the remaining truthful statements, standing alone, do not establish probable cause. *Franks*, 438 U.S. at 171–72. The defendant must prove his allegations by a "substantial preliminary showing." *Id.* at 170. To carry his burden, Desu cannot "rest on mere conclusory allegations or a 'mere desire to cross-examine,' but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses." *United States v. Yusuf*, 461

13

F.3d 374, 383 n.8 (3d Cir. 2006) (quoting *Franks*, 438 U.S. at 171). If a defendant succeeds in obtaining a hearing, he must then prove the allegations by a "preponderance of the evidence" at the hearing itself in order for a judge to suppress evidence obtained as a result of the warrant. *Franks*, 438 U.S. at 156.

We categorize false statements as "omissions" or "assertions." "[O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know." *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000). "[A]ssertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting." *Id.*

We have previously declined to say what standard of review applies to a denial of a motion for a *Franks* hearing. *See, e.g.*, *United States v. Pavulak*, 700 F.3d 651, 665–66 (3d Cir. 2012). Nonetheless, our precedent implicitly provides an answer to this question. Two different lines of cases provide our standard of review for the two elements a defendant must establish to obtain a *Franks* hearing: (1) whether a warrant application contains false statements made with reckless disregard for the truth and (2) whether the remaining truthful statements could establish probable cause by themselves.

Regarding the first element, we have held that "a district court's resolution of the question whether a particular false statement in a warrant affidavit was made with reckless disregard for the truth is subject to reversal only upon a finding of clear error." *United States v. Brown*, 631 F.3d 638, 642 (3d Cir.

14

2011).[4] Additionally, our precedent reviewing lower court probable cause determinations provides our standard of review for the second element. As explained in *United States v. Stearn*, a magistrate judge determines that probable cause exists before issuing a warrant. 597 F.3d 540, 554 (3d Cir. 2010). When a defendant files a motion to suppress evidence, a district court ensures that "a substantial basis" existed for the magistrate judge's probable cause determination. *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). We then review de novo the district court's review of the magistrate judge. *Id.*

Taken together, our precedent reveals the standard of review we should apply to a district court's denial of a motion for a *Franks* hearing. We review for clear error a district court's determination regarding whether false statements in a warrant application were made with reckless disregard for the truth. Next, after putting aside any false statements made with reckless disregard for the truth, we review de novo a district court's substantial-basis review of a magistrate judge's probable cause determination.

Desu provided eighteen examples of Connaughton's allegedly material omissions or false assertions in the affidavit.

---

[4] *Brown* adopted clear-error review of the reckless-disregard element on an appeal from a suppression order produced after a *Franks* hearing. *Brown*, 631 F.3d at 641. Desu appeals from a denial of a motion for a *Franks* hearing. But the question of whether an affiant acted with reckless disregard for the truth is the same at both the motion stage and the hearing stage of *Franks*. Only the burden of proof changes from a "substantial preliminary showing" at the motion stage to a "preponderance of the evidence" at the hearing stage. *Franks*, 438 U.S. at 155–56.

But the District Court did not clearly err in finding that Connaughton did not act with reckless disregard for the truth when he made these supposedly material omissions and false assertions. For ease of reference, we will discuss the examples using the number given to each by Desu in his briefing before the District Court. Further, we will group the examples into four categories and address each category in turn.

1

Examples #4, #5, #6, #8, #9, #12, #13, #14, and #15 do not qualify as omissions because they were not "facts that any reasonable person would know that a judge would want to know." *Wilson*, 212 F.3d at 783. At Example #4, Desu faults Connaughton for failing to mention that Desai "had approximately $2.1 million at various financial institutions . . . which far exceeded the approximately $750,000 in cash that the affidavit asserted [Desai] skimmed from [Heights Pharmacy]." App. 113. Examples #14 and #15 essentially repeat Example #4. That Desai had more money in her bank accounts than she allegedly skimmed from Heights Pharmacy does not contradict the claim that the cash-skimming scheme existed. A judge would not want to know about an irrelevant, additional sum of Desai's money in order to determine whether probable cause existed to search Desu's home.

Example #5 states that the "affidavit omitted the fact that the FBI had a motive to pursue the theory that [Desai] and [Pritesh Desai]'s cash came from [Heights Pharmacy] rather than from a source related to [Pritesh Desai]'s work as an FBI Special Agent." App. 113. Desu then describes how Pritesh Desai allegedly laundered the skimmed cash through cash transactions with his co-workers at the FBI. Example #6 elaborates on Example #5. That Pritesh Desai may have laundered

some of the couple's cash through his co-workers does not reveal that another "source" existed for the cash which the FBI had a "motive" to cover up. If anything, the evidence of money laundering reinforces the veracity of the affidavit. Examples #8, #9, #12, and #13 discuss irrelevant information that has nothing to do with the cash-skim scheme described in the affidavit. For example, the motion points out that the accountant for Heights Pharmacy accidentally recorded an intercompany transfer as revenue during one year of the scheme. This accounting error has nothing to do with whether Desu skimmed cash.

### 2

At Examples #1, #7, and #16, Desu blames Connaughton for omitting the fact that the Desais "faced numerous other potential charges" besides the *Klein* conspiracy to which Desai and Pritesh Desai pleaded guilty. App. 110–11. Connaughton also omitted the fact that the government agreed to make a departure motion for substantial assistance at the Desais' sentencing. These omissions allegedly made it appear that the Desais did not have a motivation to lie to obtain a better result for their own criminal cases. The affidavit and its supporting documents, however, described the Desais' wrongdoing in detail, including their false statements, structuring, and money laundering. A court reviewing the affidavit would understand the full extent of the Desais' motivation to lie.

### 3

For Examples #2, #3, and #10, Desu claims Connaughton falsely stated that Desu pocketed undeposited cash earnings even though Desu and Desai spent cash on lot-

17

tery payouts, petty expenses, and Desai's salary. Rather than underreporting revenue by pocketing cash, Desu asserts that they were spending the cash to run the pharmacy. Even assuming Desu and Desai spent some cash on lottery payouts, petty expenses, and Desai's salary, they could have also pocketed additional cash as alleged in the affidavit. As the District Court noted, Desu's accusations showed a "mere desire to cross-examine," rather than demonstrating Connaughton made a false assertion. *Yusuf*, 461 F.3d at 383 n.8 (internal quotation marks omitted) (quoting *Franks*, 438 U.S. at 171).

4

At Examples #11, #17, and #18, Desu complains of the affidavit's misstatement of some of the numbers from the notebook Desai used to record the cash skim at Heights Pharmacy and a misquote of Desu from the audio recording between him and Desai. The District Court did not clearly err in finding these errors to be immaterial and not made with reckless disregard for the truth. App. 7.

VI

A

For his fifth argument, Desu complains that the government constructively amended the indictment. Desu states that the grand jury indicted him for "conspiring to defraud the IRS, and for aiding and assisting in filing false tax returns, by allegedly understating the '*net business income*' of Heights Pharmacy and Arthur Avenue Pharmacy . . ., but the government's evidence [at trial] focused on the Pharmacies' unaccounted-for '*gross income*,' thereby constructively amending the Indictment." Appellant's Br. 56. He elaborates that the gov-

ernment convicted him of understating "gross income" (i.e., revenue) when the grand jury indicted him for understating "net business income" (i.e., profit).

According to Desu, the government could not convict of him of underreporting net business income as charged in the indictment. Any underreporting of revenue via the cash skim came with an equivalent underreporting of expenses since the cash would have been deducted as part of Desu's and Desai's salaries. Thus, net business income would remain unchanged with or without the unreported cash earnings. Faced with this problem, the government shifted course from the indictment and convicted Desu for understating revenue, only the first half of the net-business-income equation.

B

The government constructively amends an indictment when "the evidence and jury instructions at trial modify essential terms of the charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged." *United States v. Vosburgh*, 602 F.3d 512, 532 (3d Cir. 2010) (internal quotation marks omitted) (quoting *United States v. Daraio*, 445 F.3d 253, 259–60 (3d Cir. 2006)). We exercise de novo review "over properly preserved claims of constructive amendment or variance." *Id.* at 531.

The language in the indictment demonstrates that the government did not constructively amend it. As the indictment explained, "An S Corporation's net business income as reported on IRS Form 1120S [is] determined by subtracting its total deductions from its total income." App. 92–93. For the

19

Heights Pharmacy scheme, the indictment alleged that Desu impeded the IRS's ability to "ascertain, compute, assess, and collect income taxes," by "the skimming of cash . . . obtained from the operation of Heights Pharmacy." App. 94–95. Thus, Desu filed a corporate tax return that "did not report the correct amount of net business income received" because the return did not contain the correct amount of cash revenue. App. 99. The indictment repeated the same allegations for Desu's conspiracy with Pujara. The indictment reads exactly how Desu describes the government's theory at trial: Desu understated his revenue by skimming cash, thus leading to an understatement of net business income.[5]

VII

In his final argument, Desu says that the District Court erred at sentencing when calculating the total tax loss the government suffered. He argues that the District Court failed to reduce the tax loss by certain "unclaimed deductions at the Pharmacies' S Corporation level." Appellant's Br. 60. The District Court also failed to reduce the tax loss by items accidentally recorded as revenue by Desu's accountants. These exclusions included intercompany transfers and a shareholder loan repayment.

The Sentencing Guidelines commentary concerning the calculation of tax losses provides, "[T]he court should account

---

[5] In the alternative, Desu complains that the District Court erred in refusing to use his curative proposed jury instruction to "only consider evidence of net business income." App. 170. Since the indictment alleged the conduct that the government proved at trial, the District Court did not need to cure any error with Desu's proposed jury instruction.

for any unclaimed credit, deduction, or exemption that is needed to ensure a reasonable estimate of the tax loss, but only to the extent that . . . the credit, deduction, or exemption is reasonably and practicably ascertainable." U.S.S.G § 2T1.1 n.3. Further, "[t]he burden is on the defendant to establish any such credit, deduction, or exemption by a preponderance of the evidence." *Id.*

At sentencing, the District Court rejected Desu's claimed deductions and revenue exclusions because Desu "provide[d] very little information from which the Court could evaluate the deductions for their reliability and therefore their probable accuracy." App. 55. We review the District Court's factual findings with respect to the calculation of a defendant's sentence for clear error. *United States v. Richards*, 674 F.3d 215, 220 (3d Cir. 2012).

To support his claimed deductions and exclusions at sentencing, Desu submitted a letter from an accounting firm. The letter contained a spreadsheet with several rows showing claimed deductions and exclusions that amounted to $214,410. The letter did not cite any specific evidence admitted at trial supporting these deductions and exclusions. The District Court did not clearly err in rejecting a screenshot of a few rows of a spreadsheet as reliable evidence of $214,410 in reduced income.

\* \* \*

We will affirm the judgment of the District Court.[6]

---

[6] Desu submitted a motion to seal Appendix Volume VII. We will deny this motion.