**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 22-1358

UNITED STATES OF AMERICA

v.

JOHN LEWIS KRAMER,

Appellant

On Appeal from the Middle District of Pennsylvania
(D.C. No. 3:20-cr-00147-001)
District Court Judge:  Honorable Malachy E. Mannion

Submitted Under Third Circuit L.A.R. 34.1(a)
January 17, 2023

Before: AMBRO,[*] PORTER, and FREEMAN, *Circuit Judges*.

_____

[*] Judge Ambro assumed senior status on February 6, 2023.

(Opinion filed: August 1, 2023)

William J. Watt, III
Saporito Falcone & Watt
48 South Main Street
Suite 300
Pittston, PA 18640

     *Counsel for Appellant*

Jenny P. Roberts
Office of United States Attorney
235 North Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503

     *Counsel for Appellee*

---

## OPINION OF THE COURT

---

**FREEMAN**, *Circuit Judge*.

John Lewis Kramer was convicted of sexual exploitation of a minor and attempted witness tampering. On appeal, he challenges the District Court's denial of his motion to suppress evidence that his then-wife provided to police. Because his then-wife conducted a private search of his cellphone and voluntarily provided the evidence to the government, we hold that the evidence was admissible at trial

without implicating the Fourth Amendment. We also hold that the District Court properly denied Kramer's motion to dismiss the attempted witness tampering charge, so we will affirm the District Court's judgment.

I

In March 2020, Kramer's then-wife, Terry Kramer ("Terry"), found a document on her husband's computer that led her to believe that Kramer may have engaged in sexual conduct with a minor child ("the victim"). Later that month, Terry found photographs on Kramer's cellphone depicting the victim engaged in sexual acts. Terry contacted the police and arranged a meeting during which she described the sexually explicit photographs to police and showed them the document that she found on Kramer's computer. Terry emailed the five photographs to her own email account, powered off the cellphone, and provided it to police.[1]

That same day, the victim participated in a forensic interview during which she reported that Kramer had sexually abused her for years and had used his cellphone to take pictures of her engaged in sexual conduct. Later that day, the police interviewed Kramer, who admitted to having a sexual relationship with the victim and to using his cellphone to take photographs and video of the victim engaged in sexual activity. After meeting with the police, Terry sent the five explicit

---

[1] As discussed below, Terry testified that a police detective directed her to email the photographs to her own email account and then to email the photographs to the detective, but police witnesses testified that Terry emailed the photographs to herself before contacting them and later provided them the evidence voluntarily.

photographs that she had forwarded to her own email account to a police detective's email address.

The police used the statements of Terry, the victim, and Kramer to obtain a warrant to search Kramer's cellphone. Their initial forensic examination of the cellphone yielded no sexually explicit photographs or video. They suspected problems with the forensic software, so they conducted a manual search of the cellphone and found four videos and one photograph depicting sexual acts involving the victim. The F.B.I. conducted further forensic analysis of the cellphone and found five more photographs—the same five photographs that Terry had found and sent to the police.

Kramer was initially charged with one count: sexual exploitation of children, in violation of 18 U.S.C. § 2251(a). While in custody, he sent Terry a letter stating, *inter alia*, "You crossed [the] line and it IS going to cost you in the end one way or another and nothing will stop it!" Gov't Br. at 27 (quoting letter). He repeatedly stated in the letter that, if he went to trial for the exploitation charge, he would have Terry arrested and jailed for crimes she purportedly committed on the day she called police to report the sexually explicit photographs. He also told Terry that he had proof of her "testimony to the police" and reports to state and federal law enforcement, which he had obtained in discovery. *Id.* He wrote that he would have Terry jailed if she did not answer his letter, told anyone involved in his case about the letter, or responded to the letter in a negative way. Terry provided the letter to law enforcement, and Kramer was later charged with an additional count: attempted witness tampering, in violation of 18 U.S.C. § 1512(b)(1).

4

During trial, Kramer moved to suppress the five explicit photographs that Terry found on his cellphone and sent to the police, arguing that they were obtained in violation of the Fourth Amendment. He also moved to suppress the four videos and one additional photograph that the police found on his cellphone, arguing that this evidence was the fruit of the poisonous tree. The District Court denied both motions.

At the close of the government's case, Kramer moved for a judgment of acquittal on the attempted witness tampering charge, arguing that the letter he sent to Terry did not support an intent to threaten her. The District Court denied the motion, finding that the letter was meant to intimidate and threaten Terry about her potential testimony.

Kramer was convicted of both counts and was sentenced to an aggregate term of 360 months' imprisonment. He timely appealed.

II

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

Our Court applies a mixed standard of review over a denial of a motion to suppress evidence: we review findings of fact for clear error, and we exercise plenary review over legal determinations. *United States v. Tracey*, 597 F.3d 140, 146 (3d Cir. 2010). Because the District Court denied the suppression motion, we view the facts in the light most favorable to the Government. *United States v. Dyer*, 54 F.4th 155, 158 (3d Cir. 2022).

5

We exercise plenary review over a denial of a motion for judgment of acquittal. *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005). We independently "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[] beyond a reasonable doubt based on the available evidence." *Id.* (citations omitted).

## III

### A

Kramer argues that Terry was acting as an agent of the government when she preserved explicit photographs from his cellphone and provided the photographs to police. We have not previously adopted a test for when a private party acts as an agent of the government for purposes of the Fourth Amendment, so we do so here.

Although the Fourth Amendment does not protect against the independent actions of private citizens, it does protect against searches or seizures conducted by a private party acting as an agent of the government. *Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 614 (1989). Whether the private party was acting as an agent of the government "turns on the degree of the Government's participation in the private party's activities, a question that can only be resolved in light of all the circumstances." *Id.* at 614–15 (cleaned up).

Four of our sister Courts of Appeals assess whether a private party was an agent of the government by evaluating two factors: (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private citizen

6

performing the search intended to assist law enforcement or acted to further her or his own legitimate and independent purposes. *United States v. Rosenow*, 50 F.4th 715, 731 (9th Cir. 2022); *United States v. Koerber*, 10 F.4th 1083, 1114 (10th Cir. 2021), *cert. denied*, 143 S. Ct. 326 (2022); *United States v. Jarrett*, 338 F.3d 339, 344 (4th Cir. 2003); *United States v. Steiger*, 318 F.3d 1039, 1045 (11th Cir. 2003). Other Courts of Appeals apply variations of this two-factor inquiry.[2]

---

[2] The Seventh Circuit assesses the two factors in text as "critical factors," and it notes that "[o]ther useful criteria are whether the private actor acted at the request of the government and whether the government offered the private actor a reward." *United States v. Shahid*, 117 F.3d 322, 325 (7th Cir. 1997) (citation omitted). The Eighth Circuit assesses the two factors in text plus a third factor: whether the citizen acted at the government's request. *United States v. Avalos*, 984 F.3d 1306, 1307–08 (8th Cir. 2021). The Sixth Circuit applies a similar two-pronged inquiry: "the police must have instigated, encouraged or participated in the search," and "the individual must have engaged in the search with the intent of assisting the police in their investigative efforts." *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985). In the Second Circuit, a "search conducted by private individuals at the instigation of a government officer or authority may sometimes be attributable to the government for purposes of the Fourth Amendment; but private actions are generally attributable to the government only where there is a sufficiently close nexus between the State and the challenged action of the entity so that the action of the latter may be fairly treated as that of the State itself." *United States v. DiTomasso*, 932 F.3d 58, 67–68 (2d Cir. 2019) (cleaned up).

7

We adopt this two-pronged inquiry, which is consistent with our previous decisions. *See, e.g.*, *Meister v. Comm'r*, 504 F.2d 505, 510 (3d Cir. 1974) (rejecting Fourth Amendment argument where the record clearly established that the private actor conducted a search and seizure without the Government's knowledge); *United States v. Valen*, 479 F.2d 467, 469–70 (3d Cir. 1973) (a private citizen was not acting as a government agent where "no attempt was made by the government to use him to do that which the agents themselves were forbidden to do" and the private citizen conducted the search only "to protect himself and his employer"); *Doe v. Luzerne Cnty.*, 660 F.3d 169, 179 (3d Cir. 2011) (a video recording conducted by a law enforcement officer who "acted for personal reasons and outside the scope of a governmental investigation" does not implicate the Fourth Amendment). The defendant bears the burden of proving that a private party was acting as an instrument of the government for purposes of the Fourth Amendment. *See United States v. Donahue*, 764 F.3d 293, 298 (3d Cir. 2014) (a defendant moving to suppress evidence seized in a search bears the burden of proving that the search was illegal).[3]

Applying the inquiry here, we conclude that Terry's first search of Kramer's cellphone—conducted at her home, for her own purposes, before she contacted law enforcement—did not implicate the Fourth Amendment. Neither did Terry's second search of the cellphone—when she re-reviewed the photographs and preserved them.

---

[3] Our sister Circuits likewise place the burden on the defendant to prove that a private party acted as an instrument of the government. *See, e.g.*, *Rosenow*, 50 F.4th at 729; *Avalos*, 984 F.3d at 1308; *Jarrett*, 338 F.3d at 344; *Shahid*, 117 F.3d at 325.

The record contains conflicting testimony about whether the police instructed Terry to preserve the photographs or whether she preserved the photographs of her own volition. Terry testified that the police directed her to email the photographs to her own email account and then to a detective's email address, but that detective denied giving any such direction and testified that Terry had preserved the photographs before calling the police. Another detective testified that Terry told him she had previously emailed the photos to herself and volunteered to email the photos to him.

When the District Court considered the motion to suppress, it informed the parties that it would assume Terry's testimony was accurate. Although the parties treat that as a factual finding for the purposes of this appeal, the District Court did not make a factual finding that Terry's testimony was accurate; it simply recounted the evidence in the light most favorable to the defense. Because this Court reviews the denial of a motion to suppress by construing the facts in the light most favorable to the government, we must assume that Terry preserved the photographs and sent them to the police of her own volition. This makes the application of the agency test easy. Terry searched Kramer's cell phone without the government's knowledge or acquiescence, and she did so to further her own legitimate and independent purposes. There is no state action when a private person voluntarily turns over property she discovered from legitimate private actions. *Cf. United States v. Smythe*, 84 F.3d 1240, 1243 (10th Cir. 1996) ("Fourth Amendment concerns simply are not implicated when a private person voluntarily turns over property belonging to another and the government's direct or indirect participation is nonexistent or minor." (quotations omitted)).

Neither of Terry's searches of Kramer's cell phone implicated the Fourth Amendment.[4]  As a result, Kramer's fruit-of-the-poisonous-tree argument must fail.

B

To prove attempted witness tampering, the Government needed to show that: (1) the defendant intimidated, threatened, or corruptly persuaded the witness; (2) the defendant was motivated by a desire to prevent the communication between any person and law enforcement authorities concerning the commission or possible commission of an offense; (3) the offense was actually a federal offense; and (4) there was a reasonable likelihood that the person whom the defendant believes may communicate with law enforcement would in fact make a relevant communication with a federal law enforcement officer.  18 U.S.C. § 1512(b)(1); *United States v. Tyler*, 956 F.3d 116, 123 (3d Cir. 2020).

The District Court properly denied Kramer's motion for judgment of acquittal on the attempted witness tampering charge.  The government introduced sufficient evidence for a rational trier of fact to find each element of the offense proven

_____

[4] The scenario here is much like the hypothetical described in *Coolidge v. New Hampshire*, which the Supreme Court described as being one that would not implicate the Fourth Amendment: "Had Mrs. Coolidge, wholly on her own initiative, sought out her husband's guns and clothing and then taken them to the police station to be used as evidence against him, there can be no doubt under existing law that the articles would later have been admissible in evidence."  403 U.S. 443, 487 (1971), *abrogated in part by Horton v. California*, 496 U.S. 128 (1990).

beyond a reasonable doubt. It is undisputed that Kramer sent the letter to Terry and that sexual exploitation of a minor is a federal offense. And a rational factfinder could determine the remaining elements proven by Kramer's emphatic written statements that he would have Terry jailed if he went to trial and his references to Terry's statements to law enforcement implicating him in the sexual-exploitation offense.

## IV

For the foregoing reasons, we will affirm the District Court's judgment.

11