**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2296
_____

UNITED STATES OF AMERICA,

v.

ROBERT JURSALUM BROWN,
Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Crim. No. 1:21-cr-00009-001)
District Judge: Honorable Christopher C. Conner
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 20, 2024

Before: RESTREPO, FREEMAN, and McKEE, *Circuit Judges*

(Filed: June 12, 2024)
_____

OPINION[*]
_____

RESTREPO, *Circuit Judge*.

Robert Brown pleaded guilty to four counts of possession with intent to distribute

crack cocaine while preserving his right to appeal the denial of his motion to suppress. The

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not
binding precedent.

District Court sentenced him to 120 months' imprisonment, to be followed by a three-year term of supervised release. On appeal, Mr. Brown argues that the District Court erred by denying his motion to suppress evidence obtained from his apartment and vehicle because the search warrant was not supported by probable cause and the District Court should have held a *Franks* hearing to determine whether the warrant was founded upon false or incomplete information. Mr. Brown also claims that the District Court erred by applying the career-offender enhancement at sentencing based on his prior drug trafficking convictions in Pennsylvania. For the reasons that follow, we will affirm his conviction and sentence.

## I.[1]

### A.

On the a denial of a motion to suppress evidence, we review findings of fact for clear error and exercise plenary review over legal determinations. *United States v. Kramer*, 75 F.4th 339, 342 (3d Cir. 2023). Because the District Court denied the suppression motion, we view the facts in the light most favorable to the Government. *Id.* We review the magistrate judge's issuance of the search warrant to determine whether there was "a 'substantial basis' for concluding that probable cause was present." *United States v. Ritter*, 416 F.3d 256, 262 (3d Cir. 2005) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). While we exercise plenary review of the District Court's consideration of that question, *id.* at 261, we pay "great deference" to the magistrate judge's original determination, *id.* at

---

[1] The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

264 (quoting *Gates*, 462 U.S. at 236).

The magistrate judge issuing a search warrant must make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit," there is "a fair probability that contraband or evidence of a crime will be found in a particular place," and thus there is probable cause to search it. *Gates*, 462 U.S. at 238. Contrary to Mr. Brown's argument, the facts provided in the affidavit in this case were sufficient to support a finding of probable cause.

The affidavit—sworn by Harrisburg Police Detective Jason Paul—described the following: a confidential informant ("CI") told Detective Paul that a tall Black male with very long braids, nicknamed "Gangster," was selling cocaine from his residence at the corner of Penn and Calder Streets in Harrisburg, Pennsylvania. The description caused Detective Paul to suspect that Gangster was Mr. Brown, whom he knew to be a drug trafficker in the Harrisburg area. At the direction and under the careful surveillance of Harrisburg Police officers, the CI performed a series of three controlled drug buys with Gangster: one outside Gangster's residence at 205 Calder Street, one inside the residence, and one at a nearby gas station in Gangster's parked vehicle. Prior to the first transaction, Detective Paul showed the CI a photograph of Mr. Brown, and the CI positively identified him as Gangster. The CI entered each controlled buy with pre-recorded money provided by the police to purchase the drugs and left with a quantity of cocaine. After the third controlled buy, the Pennsylvania State Police confirmed that Mr. Brown lived in Apartment #1 at 205 Calder Street and was on state parole. Pennsylvania Department of Transportation records also confirmed that the vehicle used for the third controlled buy was

3

registered to him. These facts, viewed in the light most favorable to the Government, provided a substantial basis for the magistrate judge to issue the search warrant.

**B.**

Alternatively, Mr. Brown argues that the magistrate judge was misled by certain misstatements and omissions from Detective Paul's probable-cause affidavit—in violation of *Franks v. Delaware*, 438 U.S. 154 (1978)—and thus the District Court should have held a hearing to test the veracity of Detective Paul's allegations. But "[t]he right to a *Franks* hearing is not absolute." *United States v. Pavulak*, 700 F.3d 651, 665 (3d Cir. 2012). "The [individual] must first (1) make a 'substantial preliminary showing' that the affiant knowingly or recklessly included a false statement in or omitted facts from the affidavit, and (2) demonstrate that the false statement or omitted facts are 'necessary to the finding of probable cause." *Id.* (quoting *United States v. Yusuf*, 461 F.3d 374, 383–84 (3d Cir. 2006)). We review the first prong for clear error and the second de novo. *See United States v. Desu*, 23 F.4th 224, 229, 235 (3d Cir. 2022).

Mr. Brown insists that the allegations in Detective Paul's affidavit materially conflicted with testimony he gave at a preliminary hearing on related state charges in two ways. First, Detective Paul stated in his affidavit that he "believed" Mr. Brown was the suspect on May 19, 2020 (during his first meeting with the CI but before conducting any controlled buys), yet testified at the preliminary hearing that he "didn't realize" the suspect was him until "after the first deal" on May 20. App. 34, 45. Second, Detective Paul stated in his affidavit that he showed the CI a photo of Mr. Brown before the first controlled buy and the CI identified him as Gangster; however, when asked at the preliminary hearing

4

whether he did any pre-work to determine who Gangster was, Detective Paul never mentioned showing the CI a photo of Mr. Brown, instead noting only that he ran the suspect's address without success and then "just did a buy." App. 34, 47.

The District Court concluded that these two excerpts did not amount to false statements or omissions made with reckless disregard for the truth. We need not weigh in on this decision because, even assuming that they did, Mr. Brown has not shown that "the remaining truthful statements, standing alone," would fail to establish probable cause. *See Desu*, 23 F.4th at 234 (citing *Franks*, 438 U.S. at 171–72). Indeed, when exactly Detective Paul learned about Mr. Brown's alias, or whether he showed a photo of him to the CI, was immaterial because the affidavit adduced many other facts indicating that Mr. Brown was Gangster. They include: (1) the CI's tip that a person resembling Mr. Brown sold cocaine and lived at 205 Calder Street; (2) descriptions of three controlled buys (two of which were conducted near or inside 205 Calder Street); (3) firsthand visual surveillance of Mr. Brown entering and exiting 205 Calder Street during and after drug sales; (4) vehicle ownership records connecting Mr. Brown to the car in which the third controlled buy was consummated; and (5) parole records connecting Mr. Brown to 205 Calder Street. In sum, even if these allegedly false statements or omissions were corrected, the remaining information would still make it "reasonable [for a magistrate judge] to assume" that the requested search would lead to the discovery of the sought-after evidence. *Yusuf*, 461 F.3d at 390. Thus, the District Court correctly denied Mr. Brown's motion to suppress without a *Franks* hearing.

5

## II.

Lastly, Mr. Brown claims that the District Court erred in applying the career-offender sentencing enhancement under USSG §4B1.1. We exercise plenary review over the District Court's interpretation of the Sentencing Guidelines, including whether a prior conviction qualifies as a predicate career offender offense. *See United States v. Dawson*, 32 F.4th 254, 258 (3d Cir. 2022). We review unpreserved objections for plain error. *Id.*

Under the Guidelines, the career-offender sentencing enhancement applies if the individual "has at least two prior felony convictions of . . . a controlled substance offense." *United States v. Glass*, 904 F.3d 319, 321 (3d Cir. 2018) (quoting §4B1.1(a)). "A 'controlled substance offense' is an offense that (1) is punishable by a term of imprisonment that exceeds one year and (2) 'prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.'" *Id.* (quoting §4B1.2(b)). That said, "[a] state conviction cannot qualify as a 'controlled substance offense' if its elements are broader than those listed in §4B1.2(b)." *Id.*

Here, the District Court applied the career-offender enhancement based on Mr. Brown's two prior Pennsylvania felony convictions for possession of cocaine with intent to distribute ("PWID") under Pa.C.S. § 780-113(a)(30).[2] Though not preserved before the

---

[2] In the District Court, Mr. Brown only objected to the enhancement on the grounds that Pennsylvania's definition of what constitutes cocaine is broader than the definition supplied in the Controlled Substances Act. The District Court overruled his objection,

6

District Court, he now argues that those convictions are not "controlled substance offense[s]" under §4B1.2(b) because the conduct element of the Pennsylvania statute is categorically broader than that proscribed by federal law, given that the former can be satisfied by a mere offer to sell drugs. We discern no error, plain or otherwise.

In *United States v. Glass*, Malachi Glass similarly challenged the application of the career-offender sentence enhancement under §4B1.1. 904 F.3d at 320. There, as here, the enhancement was based on two prior state convictions under 35 Pa.C.S. § 780-113(a)(30), and Mr. Glass also argued on appeal that the Pennsylvania statute was broader than the Guidelines definition of a "controlled substance offense" to the extent it criminalized a mere offer to sell drugs. *Id.* at 322. Our Court held that a mere offer to sell drugs is not impliedly included in the Pennsylvania statute, *id.*, and therefore the statute "does not sweep more broadly than §4B1.2," *id.* at 324. As a result, we held that a conviction under the Pennsylvania statute "is a 'controlled substance offense' and may serve as a predicate offense to a career-offender enhancement under §4B1.1." *Id.* at 324.

*Glass* compels the same interpretation here.[3] Because 35 Pa.C.S. § 780-113(a)(30) "does not sweep more broadly than §4B1.2," *id.*, Mr. Brown's prior Pennsylvania drug

---

citing *United States v. Lewis*, 58 F.4th 764, 768–69 (3d Cir. 2023). On appeal, he now recognizes that this argument is foreclosed by *Lewis*, so we do not address it further here.

[3] To get out from under *Glass*, Mr. Brown points to *Commonwealth v. Walker*, 268 A.3d 426, 2021 WL 5314436, at *6 (Pa. Super. Ct. Nov. 16, 2021), in which a panel of the Superior Court of Pennsylvania explicitly disagreed with some of the *Glass* Court's analysis. *See id.* ("[W]e would reject the conclusion in *Glass* that . . . the legislature did not intend for section 780-113(a)(30) to encompass an offer for sale."). But that decision does not affect our plain-error inquiry here. For one, *Walker* is non-precedential and, by the Superior Court's own rules, can be cited only for its persuasive value. *See* Pa. R.A.P.

convictions may serve as predicate offenses. Accordingly, the District Court did not plainly err by applying the career-offender enhancement.

### III.

For these reasons, we will affirm Mr. Brown's conviction and sentence.

---

126(b); Pa. Super. Ct. R. 65.37(b). Moreover, federal courts are only bound "by a state's *highest court*'s interpretation" of its state laws, *United States v. Harris*, 68 F.4th 140, 144 n.2 (3d Cir. 2023) (emphasis added), and the Supreme Court of Pennsylvania has not spoken on this issue. Thus, we (and the District Court) are bound by our interpretation of this statute in *Glass*, absent "persuasive evidence of a change in Pennsylvania law." *Debiec v. Cabot Corp.*, 352 F.3d 117, 131 (3d Cir. 2003). And *Walker* cannot yet represent such a change; it has not been cited by any state or federal court since it was issued two-and-a-half years ago.