**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2903
_____

UNITED STATES OF AMERICA

v.

RICKY HUBBARD,
                           Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 2-20-cr-00507-001)
District Judge: Honorable Kevin McNulty
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on October 31, 2024

Before: HARDIMAN, PHIPPS, and FREEMAN, *Circuit Judges*

(Opinion filed: November 21, 2024)

_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FREEMAN, *Circuit Judge*.

Ricky Hubbard was convicted of multiple firearm and drug trafficking offenses and received a 228-month prison sentence. On appeal, he argues that the District Court erred in admitting certain evidence and denying his motions for a new trial and for judgment of acquittal. He also contends that his sentence was excessive. For the reasons that follow, we will affirm the judgment.

**I**

On a November 2019 morning, Officer Adedeji Akere of the Union Township Police Department saw a minivan with tinted side windows traveling through Union, New Jersey. Aided by the light through the untinted front windshield, Akere saw that the driver was holding a phone to his ear with one hand "as if he was talking," while driving with the other hand. JA222. Akere believed the tinted windows and handheld cellphone use violated New Jersey law, so he and his partner followed the minivan in their unmarked car. They paced the minivan and determined that it was traveling nine miles over the speed limit (a third traffic violation), so they pulled the minivan over.

Hubbard was driving the minivan. When Akere approached, Hubbard rolled down a window and Akere noticed an overwhelming smell of raw marijuana. Akere also noticed loose paneling around the radio, which he found odd, and five or six air fresheners, which he knew could be used to mask the odor of illegal drugs. He asked Hubbard to exit the vehicle, searched him, and smelled marijuana on his clothing. Police then searched the minivan and found marijuana, heroin, and cocaine, plus drug packaging materials.

2

Akere arrested Hubbard and had his minivan towed to the police station. There, police continued the search. They found additional heroin, cocaine, and fentanyl. The cocaine was packaged in 118 separate vials, and the heroin and fentanyl were packaged in 250 wax folds. (At trial, a detective testified that the quantity and packaging of these drugs was indicative of drug distribution, not personal use.) Police also found a loaded firearm, which they later learned had been stolen. They swabbed the firearm for DNA, and executed a warrant to collect Hubbard's DNA through a buccal swab. Forensic testing revealed that DNA on the firearm was consistent with Hubbard's DNA profile.[1]

A grand jury returned an indictment charging Hubbard with (1) possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); (2) possession with intent to distribute cocaine, heroin, and fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). A jury convicted him on all three counts. At sentencing, the District Court calculated a Sentencing Guidelines range of 360 months' to life imprisonment. It imposed a sentence of 228 months' imprisonment. Hubbard timely appealed from the judgment.

---

[1] At trial, an expert in forensic DNA analysis testified that the DNA results obtained from the firearm's grip "are approximately 9.26 quadrillion times more likely if Ricky Hubbard is the source of the DNA than any other person." JA409.

**II**[2]

Hubbard challenges the denial of his motions to suppress various pieces of evidence. We review the District Court's findings of fact for clear error, and we give its legal determinations plenary review. *United States v. Kramer*, 75 F.4th 339, 342 (3d Cir. 2023). Because the District Court denied Hubbard's suppression motions, we view the facts in the light most favorable to the government. *Id.*

A

First, Hubbard argues that the warrantless stop and subsequent search of his minivan were unconstitutional, so the fruits of the search should be suppressed. This argument fails because Akere had reasonable suspicion for the stop and probable cause for the search.

It is well established that an officer is permitted to "conduct a brief, investigatory stop without a warrant" when he has a "reasonable, articulable suspicion that criminal activity is afoot." *United States v. Amos*, 88 F.4th 446, 451 (3d Cir. 2023) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). Accordingly, an officer "who observes a violation of state traffic laws may lawfully stop the car committing the violation." *United States v. Thompson*, 772 F.3d 752, 759 (3d Cir. 2014) (internal quotation marks and citation omitted).

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

4

Here, Akere lawfully stopped Hubbard's minivan when he observed at least two traffic violations: driving while using a handheld cell phone and speeding. The District Court credited Akere's testimony that he saw Hubbard holding his cellphone to his ear as if talking on the phone while driving.[3] It also credited Akere's testimony that he paced Hubbard driving nine miles over the speed limit. Akere's observations establish reasonable suspicion for the stop.

The search of the minivan was lawful as well. Under the automobile exception to the Fourth Amendment's warrant requirement, "officers may search an automobile without having obtained a warrant so long as they have probable cause to do so." *Collins v. Virginia*, 584 U.S. 586, 592 (2018). "Probable cause for a warrantless car search exists if there is a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure . . . ." *United States v. Moody*, 485 F.2d 531, 534 (3d Cir. 1973) (cleaned up).

The District Court credited Akere's testimony that he detected the scent of marijuana from inside the minivan. Although Hubbard's expert opined that the officers could not have smelled marijuana while standing outside of the minivan, the District Court gave that opinion no weight because the expert did not evaluate critical facts. The

---

[3] In his reply brief, Hubbard challenges the District Court's credibility finding, arguing that Akere could not see though the tinted windows. Hubbard did not raise this argument in his opening brief, so it is forfeited. *See McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229, 241 (3d Cir. 2012). In any event, the District Court's credibility finding was "supported by the record and . . . we will not second-guess" it. *DiFederico v. Rolm Co.*, 201 F.3d 200, 208 (3d Cir. 2000).

District Court's credibility determinations were well grounded in the record, and Akere's observations of an overwhelming marijuana odor, multiple air fresheners, and loose interior paneling provided ample probable cause to search the minivan. *See United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006) ("It is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause.").[4]

B

Second, Hubbard contends that the District Court should have suppressed all statements he made to Akere while standing outside of his minivan. But he does not cite any statements that were admitted at trial or explain how he was harmed by any such admissions. Accordingly, he has forfeited this issue on appeal. *See United States v. James*, 955 F.3d 336, 345 n.8 (3d Cir. 2020); *United States v. Irizarry*, 341 F.3d 273, 305 (3d Cir. 2003); Fed. R. App. P. 28(a)(8) (stating that the argument section of an appellant's brief "must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

---

[4] Hubbard appears to argue that the police needed a warrant to continue their search after towing the minivan. That is incorrect. Probable cause "justifies the search of every part of the vehicle and its contents that may conceal the object of the search," and it "does not dissipate after the automobile is immobilized." *United States v. Donahue*, 764 F.3d 293, 300 (3d Cir. 2014) (cleaned up).

## C

Third, Hubbard argues that the DNA evidence from his buccal swab should have been suppressed because it was collected outside the presence of counsel. We disagree, as he did not have the right to counsel during the collection.

The Sixth Amendment guarantees a "right to counsel at all critical stages of the criminal process." *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004). Critical stages are "those when the defendant faces significant consequences and the guiding hand of counsel is necessary to assure a meaningful defence." *Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 764–65 (3d Cir. 2018) (cleaned up). The Supreme Court has held that taking a handwriting exemplar is not a critical stage entitling a defendant to the assistance of counsel because the defendant can take his own exemplars and challenge the prosecution's exemplars at trial. *Gilbert v. California*, 388 U.S. 263, 267 (1967). For the same reason, collecting a buccal swab is not a critical stage of the criminal process. *See United States v. Lewis*, 483 F.3d 871, 874 (8th Cir. 2007). Therefore, the absence of counsel during the collection of Hubbard's buccal swab did not violate his Sixth Amendment right.

## III

Hubbard next contends that the District Court erred by denying his motions for a new trial and for judgment of acquittal. He argues that a defect in the chain-of-custody documentation for the DNA evidence resulted in a miscarriage of justice, requiring a new trial on the firearm counts. He also argues that the District Court should have entered

judgment of acquittal for possession of drugs with the intent to distribute ("PWID") and for possessing a firearm in furtherance of drug trafficking. Neither argument is availing.

A

Hubbard did not preserve the chain-of-custody issue at trial, so we review the issue for plain error. *United States v. Kolodesh*, 787 F.3d 224, 230 n.4 (3d Cir. 2015) (applying plain error review to an issue raised for the first time in a motion for a new trial). Our review begins and ends at step one because there was no error.

Hubbard's chain-of-custody argument pertains to a package containing eight swabs used to collect DNA from the firearm. At trial, a police officer (Officer Moro) testified that she handed the package to a detective (Detective Young) on November 15, 2022, for delivery to the forensics lab. Moro admitted she did not update the evidence log to reflect that she provided the package to Young. Nonetheless, Young testified that he delivered the package to the lab on November 15, 2022, and a DNA analyst testified that the lab received the package from Young that same day. Cumulatively, the government's chain-of-custody evidence was "sufficient to permit a reasonable juror to find that the [DNA evidence] [wa]s what its proponent claim[ed]." *United States v. Reilly*, 33 F.3d 1396, 1405 (3d Cir. 1994). So the DNA evidence was admissible, *id.*, and its admission did not cause a miscarriage of justice.

B

We give plenary review to the denial of a motion for judgment of acquittal. *Kramer*, 75 F.4th at 342. We independently "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have

found proof of guilt beyond a reasonable doubt based on the available evidence." *Id.* (cleaned up).

Police found Hubbard alone in a minivan with large quantities of cocaine, heroin, and fentanyl divided into hundreds of small packages, plus additional drug-packaging materials. A detective testified that the quantities and packaging of the drugs were consistent with distribution. This evidence was more than sufficient for the PWID conviction. *See United States v. Barrow*, 287 F.3d 733, 736–37 (8th Cir. 2002) ("Circumstantial evidence such as drug quantity [and] packaging material . . . may be used to establish intent to distribute[.]"). The minivan also contained a stolen and loaded firearm, so there also was sufficient evidence to convict him of possessing a firearm in furtherance of drug trafficking. *See United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004).[5]

**IV**

Hubbard's remaining issues are forfeited. He summarily asserts that the District Court erred by admitting his driving records, which, "although possibly part of a business record, was inadmissible hearsay and violative of Rule 403 and Rule 404(b)." Appellant's Br. at 29. He provides no record citations or analysis, so we will not reach this issue. *See James*, 955 F.3d at 345 n.8; *Irizarry*, 341 F.3d at 305.

---

[5] In a one-sentence footnote, Hubbard contends that the Second Amendment gives him an absolute right to possess a firearm regardless of his criminal history. This issue is forfeited. *See James*, 955 F.3d at 345 n.8.

He also baldly argues that his sentence was excessive and that the District Court erroneously applied the career offender Sentencing Guidelines enhancement. Again, he provides no analysis. Nor did he preserve an objection to the procedural reasonableness of the sentence. *See United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014). In any event, we discern no procedural error in the District Court's designation of Hubbard as a career offender under the Guidelines. And we cannot conclude that no reasonable sentencing court would have imposed this sentence (which was 132 months below the bottom of the applicable Sentencing Guidelines range) on Hubbard for the reasons the District Court provided. *See United States v. Tomko*, 562 F.3d 558, 567–68 (3d Cir. 2009) (en banc).

**\* \* \***

For the foregoing reasons, we will affirm the judgment.