NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-1558
_____

UNITED STATES OF AMERICA

v.

DESHAUN CURTIS JONES,
Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2:21-cr-00017-001
District Judge:  The Honorable William S. Stickman, IV
_____

Submitted under Third Circuit L.A.R. 34.1(a)
January 24, 2025

Before: HARDIMAN, AMBRO, and SMITH, *Circuit Judges*

(Filed: February 21, 2025)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SMITH, *Circuit Judge*

I.

While driving, Deshaun Jones was stopped by police for a suspected window tint violation. After a subsequent dog sniff indicated the presence of narcotics, officers searched the vehicle and seized drugs and a firearm. Jones moved to suppress the fruits of the search, which the District Court denied. He entered a conditional plea of guilty to possession with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Jones now challenges the District Court's denial of his suppression motion. For the following reasons, we will affirm.

II.

At the suppression hearing, Detective Shane Rebel testified that he was sitting in a police car on the side of State Route 30 with his high-beams on when he observed a BMW with heavily tinted windows pass by. According to Detective Rebel, the tint was such that it prevented the detective from seeing the vehicle's occupants. Detective Rebel followed the BMW, which did not immediately pull over, activated his emergency lights, and initiated a traffic stop. He testified during the suppression hearing that Jones was the driver, and that after he knocked on the vehicle's passenger window it was lowered. Detective Rebel said he was immediately met with the odor of raw marijuana.

Detective Rebel asked Jones for his license, registration, and proof of insurance. Jones handed him a Pennsylvania identification card, rather than a valid driver's license. The passenger, who identified herself as Keyoka Akins, began to retrieve the vehicle

2

registration from the glove box. While waiting for the requested documents, Detective Rebel noticed that Jones was unusually nervous. After Akins closed the glove box, Detective Rebel saw packaging paper he recognized as a "brick wrapper" for heroin between Akins's feet on the floor of the vehicle. The item resembled packaging he had seen just weeks before while investigating a case involving a fatal overdose. While Detective Rebel spoke with Jones at the rear of the vehicle, police dispatch advised the detective that Jones's license was both "expired" and "suspended." SA87.

In the meantime, Detective Rebel's supervisor, Sergeant Justin Wardman, arrived on scene with his K-9 partner. Sergeant Wardman had heard Detective Rebel advise dispatch that he was not certain the driver intended to pull over. Sergeant Wardman also noted that he saw Detective Rebel pursuing Jones's vehicle, and that he observed that the vehicle's windows were "pretty much blacked out." SA 48.

Detective Rebel returned to the passenger-side window and asked Akins if there was marijuana in the vehicle. She replied there was not, and Jones agreed. When Jones refused to consent to a search of the vehicle, Sergeant Wardman conducted a dog sniff around the vehicle. The K-9 alerted, after which Detective Rebel handcuffed Jones and Akins. At that point, Akins provided verbal and written consent to search the vehicle. Detective Rebel found a partially opened bag, wrapped in a garbage bag, located in the back seat. It contained 342 grams of marijuana. He also found what he believed to be heroin, cocaine, and a firearm in the vehicle. Jones admitted to Officer Rebel that the contraband belonged to him, not Akins.

3

Facing federal drug and firearms charges, Jones moved to suppress the contraband seized from the vehicle. The District Court denied Jones's motion, concluding that the traffic stop was valid and that Detective Rebel had reasonable suspicion to extend the traffic stop to conduct a dog sniff. Jones timely appealed. His plea agreement preserved his right to appeal the denial of his suppression motion.

III.[1]

We review the District Court's factual findings underlying its denial of a suppression motion for clear error, and we exercise plenary review of the District Court's legal conclusions. *United States v. Kramer*, 75 F.4th 339, 342 (3d Cir. 2023). "Because the District Court denied the suppression motion, we view the facts in the light most favorable to the Government." *Id.*

Jones argues that Detective Rebel stopped him illegally and then unreasonably extended the stop. He further claims that the District Court erred in crediting Detective Rebel's testimony that he was unable to see through the vehicle's windows and that he smelled raw marijuana emanating from the vehicle. We disagree.

The Fourth Amendment protects the public from "unreasonable searches and seizures[,]" including traffic stops. U.S. Const. amend. IV; *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). The Supreme Court has explained that "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231; we have jurisdiction pursuant to 28 U.S.C. § 1291.

4

U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). To meet this "generally undemanding" reasonable suspicion standard, an officer must point to specific, articulable facts that reasonably support a suspicion "that an individual has violated the traffic laws." *United States v. Delfin-Colina*, 464 F.3d 392, 397 (2006). "[A]ny technical violation of a traffic code legitimizes a stop[.]" *United States v. Mosely*, 454 F.3d 249, 252 (3d Cir. 2006) (citing *Whren v. United States*, 517 U.S. 806 (1996)).

We agree with the District Court that Detective Rebel reasonably suspected a violation of 75 Pa. Cons. Stat. § 4524(e)(1). That provision prohibits "any sun screening device or other material which does not permit a person to see or view the inside of the vehicle[.]" The District Court noted both Detective Rebel's testimony that he was unable to see the vehicle's occupants when Jones drove by and Sergeant Wardman's observation that the vehicle's windows were "'pretty much blacked out[.]'" A30 (quoting Tr. 7 (SA48)). In addition to this testimony, the District Court stated that the dash cam videos of the two law enforcement officers "captured the blacked-out state of the front passenger window" and that even in the photographs of the vehicle taken in a "well-lit police garage, it was nearly impossible to see through" the vehicle's windows. A31.

We conclude that the District Court did not err by crediting Detective Rebel's testimony. And we will not disturb the District Court's determination that Detective Rebel's initiation of the traffic stop did not violate the Fourth Amendment. *See Delfin-Colina*, 464 F.3d at 396; *United States v. Harrell*, 268 F.3d 141, 148–49 (2d Cir. 2001).

We further conclude that Detective Rebel did not unlawfully extend the traffic stop. A lawful traffic stop can be unreasonably extended in violation of the Fourth Amendment

5

if an officer prolongs the stop "'beyond the time reasonably required'" to complete its traffic-related mission in order to investigate other crimes. *Rodriguez v. United States*, 575 U.S. 348, 350, 355–57 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Our analysis proceeds in two steps. We must first determine if and when the stop was extended—*i.e.*, the "*Rodriguez* moment[.]" *United States v. Green*, 897 F.3d 173, 179 (3d Cir. 2018) (internal quotations omitted). If we conclude the stop was extended, we then assess whether the facts available to the officer "at that time were sufficient to establish reasonable suspicion[.]" *Id.* If the officer has reasonable suspicion of other criminal wrongdoing before "engag[ing] in any unrelated investigation[,]" "there is no Fourth Amendment violation." *United States v. Garner*, 961 F.3d 264, 271 (3d Cir. 2020).

Here, the earliest plausible "*Rodriguez* moment" occurred when Detective Rebel asked Akins if there was marijuana in the vehicle. Before that inquiry, however, Detective Rebel had sufficient reasonable suspicion of separate criminal activity when he smelled raw marijuana emanating from the vehicle immediately after the vehicle's window was lowered.[2] *See United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006). Moreover, as the District Court noted, in response to Officer Rebel's request for driver's license, registration, and proof of insurance, Jones did not produce a valid driver's license, but only a Pennsylvania identification card. The Court also noted Officer Rebel's belief that Jones

---

[2] We reject Jones's assertion that the District Court clearly erred in crediting Detective Rebel's testimony that he was able to smell the 342 grams of marijuana in the bag on the back seat from the passenger window. The District Court specifically noted Detective Rebel's testimony that he recognized the odor because he had smelled it thousands of times both as a youth and in the course of his duties conducting narcotics investigations. *See United States v. Igbonwa*, 120 F.3d 437, 441 (3d Cir. 1997).

was very nervous. And there is the fact that Officer Rebel observed what he knew to be packaging paper for heroin in the vehicle, prompting reasonable suspicion of a violation of Pennsylvania's drug paraphernalia statute. *See* 35 Pa. Stat. Ann. § 780-113(a)(32). These observations provided reasonable suspicion not just for Detective Rebel's marijuana-related questions, but also for the subsequent dog sniff. *See Green*, 897 F.3d at 186–87.

For the foregoing reasons, we will affirm the judgment of the District Court.