NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-2455
_____

UNITED STATES OF AMERICA

v.

LEROY IRVIN,
              Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2:21-cr-00347-001
District Judge:  The Hon. Cathy Bissoon

_____

Submitted under Third Circuit L.A.R. 34.1(a)
October 31, 2025

Before: BIBAS, SCIRICA, and SMITH, *Circuit Judges*

(Filed January 14, 2026)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SMITH, *Circuit Judge*.

Leroy Irvin entered a conditional guilty plea admitting to possessing with the intent to distribute substances with a detectable amount of fentanyl in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vi), and 841(b)(1)(B)(vi). His conditional plea preserved the right to challenge the District Court's denial of a motion for a *Franks*[1] hearing and three motions to suppress evidence, some of which was obtained pursuant to the execution of search warrants. After the District Court sentenced Irvin to, *inter alia*, 120 months of imprisonment, he filed this timely appeal.[2] We will affirm.

## I.

At 8:23 P.M. on June 19, a sensor program known as Shotspotter[3] detected 17 rounds of gunfire by multiple shooters at 1717 Belleau Drive, an apartment building that is part of a Pittsburgh housing complex. A minute later, a second Shotspotter bulletin reported nine more rounds at 1728 Belleau Drive.[4] Sergeant Emily Myers from the Pittsburgh Police Department responded to the scene.[5]

---

[1] *See Franks v. Delaware*, 438 U.S. 154 (1978).
[2] The District Court exercised jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.
[3] Shotspotter is "an acoustic-detection system" that notifies police dispatch when it detects gunfire. Gov't Br. 4.
[4] Thirty-eight shell casings from both 40 caliber and 9 millimeter rounds were recovered at the housing complex in the area of the shooting.
[5] Sergeant Myers' bodycam recorded the events that transpired. In support of his suppression motions, Irvin submitted some of Sergeant Myers' bodycam footage, together

While police were en route, dispatch advised them that a male at 1716 Belleau had called 911 to report that he had been shot.

Upon arriving at the scene, Sergeant Myers drew her weapon for self-protection because Shotspotter is "not always accurate," A332, and she was unsure "where any potential threats" might be. A309. Other officers who responded did the same. At building 1716, Officer Matthew McShane noticed blood on the outside door. As Sergeant Myers and Officer McShane entered the building, they observed more blood on the ground floor apartment door. Sergeant Myers announced the officers' presence and directed the occupant to open the door. Having viewed the videos that accompanied the suppression motion, Judge Bissoon found that Irvin opened the door, and was "on the floor bleeding out." A297.

As Sergeant Myers worked to extricate Irvin from the apartment, three police officers, including Officer McShane, entered the apartment. Based on the videos, Judge Bissoon stated that it was "clear" that when entering the apartment, the police, with guns drawn, "believed that there was a gunman on the loose." A296-97. After the officers pulled Irvin out of the apartment and onto the

---

with footage from the bodycams of other responding officers. The District Judge noted at the time the suppression hearing commenced that she had already viewed the bodycam videos.

sidewalk outside, they observed an iPhone Irvin dropped on the floor of the hallway outside the apartment.

After ruling out the presence of anyone else in the apartment, Officer McShane proceeded to the apartment door. There he spotted a firearm on the living room floor between an illuminated television and a couch. Law enforcement did not move the firearm.

In the meantime, Officer James Ashbaucher and Sergeant Myers attended to Irvin. Officer Ashbaucher, a former EMT, cut off Irvin's clothes to determine where he was injured. What he found were gunshot wounds to both the chest and the right leg, prompting the application of a tourniquet. As Irvin was being transported away by EMTs who had arrived at the scene, Officer Ashbaucher reached into Irvin's pants pockets looking for identification and any indication of pre-existing medical issues or emergency contacts. What Officer Ashbaucher found was a large roll of cash.

Pittsburgh Detective Joseph Lippert arrived to process the crime scene and observed, from his position in the doorway, that a firearm was lying on the floor of the apartment. He then supplied his colleague, Detective Caleb Hines, with this information and other observations in support of a probable cause affidavit for a search warrant of the apartment. A search warrant was granted and executed later that evening. During the search of the apartment, police seized drugs, heroin

4

stamped bags, a gun without a serial number (sometimes referred to as a "ghost gun"), and a Samsung cellphone. Police also seized the unattended iPhone previously observed in the public hallway. They later obtained a search warrant to determine ownership of the iPhone. Irvin's clothing, which had been cut off, was also taken from the scene into police custody.

The District Court conducted a hearing on Irvin's motions for both a *Franks* hearing and for suppression of the evidence that had been seized from the apartment, the iPhone, and Irvin's pants. At the conclusion of the hearing, and after considering arguments from the parties, the District Court denied the motions.

## II.

Irvin contends that he was entitled to a *Franks* hearing because he made a substantial showing that the applications for the search warrants contained false statements, as well as omissions, that were material to probable cause determinations made by Pennsylvania magistrate district judges.[6] Judge Bissoon rejected that contention, stating that Irvin failed to "demonstrate[] a falsity with respect to many of these items, [and had] certainly not demonstrated that [any

---

[6] In reviewing the denial of a *Franks* hearing, we review for clear error the determination of whether a false statement is made with reckless disregard for the truth. *United States v. Desu*, 23 F.4th 224, 235 & n.4 (3d Cir. 2022). De novo review applies to any questions of law. *Id.*

5

statement or omission] was made knowingly or with reckless disregard for the truth." A425-26.

Irvin asserts that the application to search the apartment falsely suggested that the firearm was observed lawfully and not during the initial warrrantless entry into the apartment. Detective Lippert testified, however, that in the ten to fifteen seconds after he arrived at the apartment door he observed the firearm, on the apartment floor. And Detective Lippert explained that he made this same observation before speaking with an officer who also advised that there was a firearm in the apartment. Judge Bissoon found that the evidence supported that the firearm was visible from the apartment's open door. She also found that Detective Lippert's testimony was credible. In light of these factual findings, we discern no clear error in the District Court's determination that the affidavit of probable cause to search the apartment contained neither a false statement nor an omission.

Nor are we persuaded that the District Court erred in rejecting Irvin's assertion that the affidavit in support of the iPhone search falsely stated that the owner was unknown. The mere fact that Irvin dropped the iPhone did not establish his ownership. It merely established that he had it in his possession before dropping it in the hallway. And given the presence of a Samsung cellphone on the couch in the apartment, it was not clear who owned either cellphone.

6

III.

Irvin also contends that the District Court erred in refusing to grant his motions to suppress.[7] We are not persuaded.

First, Irvin contends that the evidence obtained from the apartment should be suppressed. In his view, exigent circumstances did not excuse the warrantless entry into that dwelling since he was the victim of the shooting and had stated to the police that no one else was inside. That, he maintains, eliminated any perceived threat. Thus, he contends that the warrant was tainted because it referred to the presence of the firearm which police learned of only through their earlier warrantless search of his apartment. Yet the District Court credited Detective Lippert's account that he spotted the firearm from outside the apartment before any officer informed him that it was there. Accordingly, evidence from the initial sweep of the apartment did not taint the probable cause affidavit.[8] The warrant, as

---

[7] In reviewing the denial of a suppression motion, we review the District Court's factual findings for clear error and conduct plenary review of questions of law. *United States v. Kramer*, 75 F.4th 339, 342 (3d Cir. 2023). And because the suppression motions were denied, "we view the facts in the light most favorable to the Government." *Id.*

[8] Although we need not address whether the warrantless search was excused by exigent circumstances, we cannot ignore that the District Court declared that law enforcement had "entered what was potentially an active shooter situation, and bodycam footage clearly demonstrates that they are searching for victims and/or shooters." A439; *see Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (observing that "[o]ne exigency obviating" the warrant requirement is the "need to protect or preserve life or avoid serious injury") (omitting internal quotation marks and citation).

the District Court determined, was supported by probable cause and there was no basis for suppressing the evidence seized from the apartment pursuant to it.

Second, Irvin asserts that all evidence derived from the search of his pants must be suppressed. He acknowledged at the suppression hearing that the pants were evidence of a crime and could, therefore, be lawfully taken from the scene. But he claims that the warrantless search of his pockets violated the Fourth Amendment and requires suppression of anything found therein.

Under the inevitable-discovery exception to the exclusionary rule, "[e]vidence obtained by the police unlawfully may nonetheless be admitted into evidence if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means[.]" *United States v. Bradley*, 959 F.3d 551, 557 (3d Cir. 2020) (omitting internal quotation and citations); *see also Nix v. Williams*, 467 U.S. 431, 444 (1984). Here, police testified that they would have seized Irvin's pants to conduct an inventory search, and that it was the Police Department's practice to do so to "protect people's property" and preserve evidence. A401; *see Colorado v. Bertine*, 479 U.S. 367, 374 (1987) ("[R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment."). The District Court credited that testimony. Since Irvin's pants would have eventually been searched pursuant to a lawful inventory search, the inevitable-discovery

8

doctrine bars exclusion of that evidence. Accordingly, we will not disturb the District Court's denial of the motion to suppress the evidence obtained from Irvin's bloody pants.

Third, Irvin challenges the evidence obtained from the iPhone, contending it was unconstitutionally seized without a warrant. He argues that there was no basis to seize the iPhone because it was not immediately apparent that it contained any incriminating evidence.

The District Court concluded that "law enforcement had probable cause to believe that the iPhone contained evidence of a crime, making the seizure of Mr. Irvin's iPhone constitutional pending issuance of a warrant to later examine its contents." A441. The District Court did not clearly err in making that finding. Detective Lippert testified that the police "did not know what [Irvin's] role was[,] whether he was a true victim or if he was … a perpetrator who … lost the gun fight." A373. The cellphone, Detective Lippert explained, could reveal, *inter alia*, the parties involved in the shooting, and "any messages" or "threats" between them. A374. Accordingly, seizure of the unattended iPhone from the public hallway, where the probable cause to seize the phone was immediately apparent, did not offend the Fourth Amendment. *Arizona v. Hicks*, 480 U.S. 321, 326–27 (1987); *see also Kentucky v. King*, 563 U.S. 452, 462–63 (2011).

## IV.

In sum, we will affirm the judgment of the District Court.